RIVEJS, J.
This cause rests upon a bill of exceptions to an instruction of the court denying the right of the plaintiffs to recover upon the evidence. Questions were made by demurrer to the first and second counts of the declaration; but in the argument here it seemed to be conceded, that the necessity of deciding them would be superseded by an adjudication of the principle defining' the liability of the defendant in error. Hence, it will not be necessary to bestow any special notice upon the pleadings, but to restrict our examination to the propriety of this instruction. Its grounds are not expressed in the record; but the full and exhaustive argument we have had at this bar, discloses them with great clearness. It is contended on the part of *the City, that the corporation is not liable on two grounds: first, because the destruction of these stores was the result of that urgent necessity which, on common law principles, deprives the sufferer of indemnity; and secondly, if not to be so regarded, it was an exercise of eminent domain, not pertaining to the corporation either by express or implied delegation of powers to that end, in its charter, or the general laws of the State.
The resolutions of the City Council for the destruction of these liquors were taken on the eve of its evacuation, in April, 1865, and were carried into effect just before the entry of the Rederal forces. However, opinions may differ as to the extremity of this emergency; and the propriety of the measures thus taken to remove the most common, if not the most certain, cause of riot and military insubordination upon such an event,-it must be conceded that this step was not inconsistent with a prudent forecast, a wise discretion, and a reasonable precaution. It may not now be possible to determine how far military discipline might have restrained the soldiery and populace under the ordinary license and excitements of such an occasion, from the plunder of these liquors, and the disorders usually created by it; the natural probability, however, that it might not have been prevented by all the resources of military discipline, should now be accepted as a sufficient justification of that discretion which was reasonably employed in removing such a prolific source of disorder and brutal license on an occasion so threatening to the safety of property and the good order of society. It was not for the Council, in its deliberations on the 2d of April, to foresee the order or events- of a military hostile occupation, or to determine whether or not, by design or accident, the city might be exposed to the perils of rapine and disorder under such circumstances. Hence, it must be admitted *that these legislative guardians of the city were well justified in the exercise of a dis- • cretion as to the destruction of stores so ' dangerous to the peace and safety of the *701 ■City; and that there is nothing in the facts ■of this cause to create the belief that their action in the premises was not the result of a sound discretion and a proper precaution.
But the question is raised whether these resolutions were within the scope of their corporate powers. This court has judicially recognized this corporation as a public municipality, as well as a private one, and clothed with delegated trusts of a governmental kind. The General Assembly has chosen to impart to it some of its own sovereign attributes over the people and property embraced by its charter. It is needless to enumerate these. It is sufficient for the purpose of this enquiry to state, that it possesses ail the general corporate ! ‘powers anct capacities appertaining to municipal corporations in this commonwealth,” and that by the 29th section of its charter, the Council is specially empowered to 1 ‘pass all by-laws, rules and regulations, which they shall deem necessary for the peace, comfort, convenience, good order, good morals, health or safetj^ of said city, or of the people or property therein.” It is hard to conceive of larger terms for the grant of sovereign, legislative powers, to the specified end than those thus employed in the charter; and they must be taken by necessary and unavoidable intendment to comprise the powers of eminent domain within these limits of prescribed jurisdiction. There were two modes open to the Council: first, to direct the destruction of these stores, leaving the question of the City’s liability therefor to be afterwards litigated and determined; or secondly, assuming their liability, to contract for the values destroyed under their orders. Had they pursued the first mode, the corporation would have been liable in an action of trespass *for the damages; but they thought proper to adopt the latter mode, made it a matter of contract, and approach their citizens, not as trespassers, but with the amicable proffer of a formal receipt and the plighted ‘faith of the city’ for the payment. In this, they seem to me to be well justified. They found themselves inhibited, by the terms of their charter, sect. 49, from “taking or using any private property for public purposes, without making to the owner or owners thereof just compensation for the same.” I am well aware the exception is taken in adjudged cases, that such destruction is not within this language; but coupled with the inherent equity of such a course, this language was persuasive to the actual agreement for payment, and should be accepted as a probable and reasonable motive with the Council.
One of the primary and fundamental capacities of a corporation is, “to contract and to be contracted with.” The City, through its Council and committees, approach the liquor dealers and possess themselves of their stores by virtue of a formal contract, set forth in the resolutions of the Council, to receipt and pay for them. The least that could be said, if the City can escape this contract, would be, that the citizen was a sufferer by obedience to the public authority, and betrayed by his acquiescence in the formally proffered terms of the City. I am happy in the confidence, that no such consequence and injustice can result from the doctrines of law applicable to this case. The Council, or its successors, cannot esteem it a hardship to be required to keep their plighted faith to the holders of their receipts; and their failure to do so without suit, which, I confess, excites my surprise, is doubtless due to the doubts that have been raised by the able counsel for the defendant in error. I am, therefore, of opinion that the court below erred in its instruction to thee jury, and in ^sustaining the demurrer to the first and second counts, which set out the special undertaking of the defendant.
The other judges concurred in the opinion of Rives, J.
Judgment reversed.