## 𝔚𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

### WALLACE *v.* CITY OF RICHMOND.

#### January 11, 1897.

1. ORDINANCE OF CITY OF RICHMOND APRIL 2, 1865—*Directory clause.*—So much of the ordinance of the Council of the City of Richmond, passed April 2, 1865, as directed receipts to be given to the owners of liquor destroyed in pursuance of the ordinance was merely directory.

2. ORDINANCE OF CITY OF RICHMOND APRIL 2, 1865—*D₁ struction of liquor— Ultra vires—Eminent domain—Police regulations.*—The ordinance of the city of Richmond, adopted April 2, 1865, on the eve of the evacuation of the city by the Confederate forces, directing the destruction of all liquor in the city, and pledging the city for its payment, is *ultra vires* and void, and the owner of the liquor cannot recover the value thereof from the city. The destruction of the liquor was not an exercise of the city's power of eminent domain, but was a police regulation for the preservation of peace and good order in the city. The charter of the city limited its exercise of the right of eminent domain to the acquisition of "*ground* for the purpose of opening or extending its streets," or other public purposes. The power exercised by the city council was not conferred, either in express terms or by fair implication, by the city's charter or by the general laws; nor is it indispensable to the performance of its corporate duties, or the accomplishment of the purposes of its incorporation. *Jones* v. *City of Richmond,* 18 Gratt. 517, disapproved.

3. CITY OF RICHMOND—*Act extending power of city council—Ordinance of April 2, 1865, for the destruction of liquor.*—The Act of Assembly passed February 12, 1863 (Acts 1862-'63, p. 106), to enlarge the powers of the council of the city of Richmond, which authorizes the council to suppress gaming and gambling houses, &c., and to prevent and regulate the sale of liquors, and to seize, for the use of the city, liquors sold or kept for sale in violation of the ordinances of the city, did not authorize the city council to destroy the liquor of its citizens and bind the city for its payment.

Error to a judgment of the Circuit Court of the city of Richmond, rendered November 27, 1893, in an action of

assumpsit wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*John Howard,* for the plaintiff in error.

Mr. John Howard, for the plaintiff in error, insisted:

1. The validity of the ordinance of April 2, 1865, is *res judicata.*

The validity of this ordinance was maintained in *Jones* v. *City of Richmond,* 18 Gratt. 517, and this decision was accepted by the Supreme Court of the United States in *Smith* v. *The City,* 15 Wall. 438, as settling the local law upon the subject.  The *Jones Case* was recognized as sound in *Dinwiddie County* v. *Stuart, Buchanan & Co.,* 28 Gratt. 523.

2. If the matter were *res integra,* the ordinance was valid and binding upon the city.

In every government in which the principles of the English common law or of the general law of European nations form a part, whether specially granted or not, there necessarily exist, as coincident and inherent, those powers without which the government itself would be incapable of executing its granted powers or fulfilling the functions and accomplishing the objects of its creation.  These are the police power, and eminent domain—that is the power to take care of the peace, comfort, convenience, good order, morals, health and safety of the community, or whatever affects the welfare and security of person and property; and the power to take all kinds of private property for public use upon condition of making just compensation therefor, that is the right to acquire by compulsory purchase and sale whatever private property, real or personal, may be required for the public good.  1 Blackstone Com. 139; *Gardner* v. *Newburg,* 2 Johns. Chy. 162; Cooley on Con. Lim. (6th Ed.), 651, 526; 2 Story on the Const.,

secs. 1956, 1790; *Pumpelly* v. *Green*, 13 Wall. 166.   Neither power is expressly conferred upon the government of the United States by its Constitution, or upon the government of Virginia by its Constitution, and yet both powers are legitimately exercised by both governments, each in its proper sphere.   An American municipality is an incorporated political community, organized upon the model of the Federal and State governments, and exercising as a political autonomy, within prescribed territorial limits, the essential powers of a representative republican government.   An incorporated city in Virginia, such as the city of Richmond, is in law and fact a minature republic.   1 Dillon on Mun. Corp. (3d Ed.), page 8, *et seq.* and notes.   If the act incorporating the city were silent upon the question of police power, and the power of eminent domain, being absolutely essential to the fulfilment of the govermental objects for which it was created, those powers would of necessity be implied by the very fact of the creation of such a political community, and the government of the city of Richmond would have been authorized to exercise either or both of those powers, singly or in conjunction, as the exigencies of good government might require.   *City of Winchester* v. *Redmond*, 93 Va. 711.   The exercise of police power and of eminent domain is, however, subject to constitutional limitation, e. g., private property cannot be taken for public use without just compensation.   Teideman's Lim. of Police Power, 13, 14, 15.   Cooley's Cons. Lim. (6th Ed.) 642, 703.

Viewed in the light of these principles, the amended charter of the city of Richmond of March 18, 1865, conferred upon the city council the police power and eminent domain, in the amplest manner, subject, however, to the implied limitation, that private property should not be taken or sacrificed for public use without just compensation, or without due process of law.   By the charter (Acts of Assembly 1861, pp. 153, 154), there was created a legal political community, endowed

with large powers of self-government. The community thus created could not exist and fulfil the ends of its being without the power to protect the health, safety, and property of its citizens. That power would be necessarily implied from the very fact of the creation and existence of such a community and government. The absence of such power would frequently operate so as effectually to obstruct the fulfilment of the most important governmental functions. Without it streets could not be opened, and the community could acquire private property only by overcoming obstinacy or yielding to extortion. The performance of the functions of good government should not be liable to defeat or control by the want of consent of private parties, or of any other authority. Cooley's Cons. Lims. (6th Ed.) 645. The large terms of the grant of the sovereign, legislative powers, by the act of March 18, 1861, must be taken by necessary, unavoidable intendment made to comprise the powers of eminent domain within the limits of the city. *Jones* v. *City of Richmond*, 18 Gratt. 523. The 49th section of that act provides that "The council shall not take or use any private property for streets or other public purposes without making to the owner or owners thereof just compensation for the same," and then provides how the city shall proceed to condemn ground for its purposes where it cannot be obtained by agreement. This is an implied assertion that on making compensation private property may be taken. *Kohl* v. *United States*, 91 U. S. 322; 1 Hare's Am. Con. Law 347; *Boom* v. *Patterson*, 98 U. S. 406; *United States* v. *Jones*, 109 U. S. 518; and the right of eminent domain may be invoked as to clothing, liquors, &c., when such products cannot be obtained in open market. 1 Hare's Am. Con. Law, 333-4. The Act of Assembly, passed February 12, 1863, entitled "An act to enlarge the powers of the city of Richmond," (Acts 1862-3, p. 106), expressly conferred upon the city council both the police power and eminent domain in respect to spirituous liquors, and the ordinance of April 2,

1865, was passed and executed with direct reference to that act.

The council pledged the faith of the city to pay for the property destroyed. It cannot be said it had no power to promise payment; and, conceding the existence of the power, it is vain to say it was exercised without consideration. The consideration was a "benefit to the promisor and disadvantage to the promisee." Smith on Contracts, 171. Police power has been extended even to cases in which the incidental effect was to impinge nearly upon paramount powers, but always, even in such cases, in supposed and assumed subordination to the admitted supremacy of such powers, though verging upon their violation. *Mugler* v. *Kansas*, 123 U. S. 623; *N. & W. R. Co.* v. *Commonwealth*, 93 Va. 749; *Lacy* v. *Palmer*, 93 Va. 159. If the lawful use and existence of private property become so dangerous to a community, because of its nature or the changed circumstances in which it is placed, as to require its seizure and destruction, the police power ends, and the right and duty of eminent domain begins to act in its aid, but it must be exercised in justice alike to the individual whose property is sacrificed, and to the community for whose benefit it is sacrificed; and, though the police power may be invoked to regulate or limit the mode of use or enjoyment of lawful private property, with incidental disadvantages to the owner and at his expense, it can never be invoked for the appropriation of such property. *R. F. & P. R. Co.* v. *Richmond*, 26 Gratt. 102; *Davenport & Morris* v. *Richmond City*, 81 Va. 638; 96 U. S. 961. *Railroad Commission Cases,* 116 U. S. 331; *Hutton* v. *City of Camden*, 39 N. J. L. 126; *City of Janesville* v. *Carpenter*, 77 Wis. 331; *Winechamer* v. *People*, 3 Kernan 378; 2 Hare's Am. Cons. Law 771. And private property cannot be swept out of existence without due process of law, without notice, and without compensation. *Violett* v. *Alexandria*, 92 Va. 566. The common law principle upon which opposing counsel relies has no application

Argument.

here.   The right to destroy private property for public good, with exemption from liability, in order to avoid some imminent peril, has been recognized by this court, and the right of destruction in a particular class of cases as to all kinds of property regulated and modified by statute.   *Beach* v. *Trudguin*, 2 Gratt. 221; *Ameck* v. *Thorp*, 13 Gratt. 569; V. C. (1860), ch. 55, secs. 11 to 17.   The question of common law liability in all cases is one of fact, sometimes raised before a jury under instructions from the court (*Harman* v. *City of Lynchburg*, 33 Gratt. 41), and sometimes by a demurrer to a plea.   (*Beach* v. *Trudguin*, *supra*.)   In this instance the decision as to destruction of the property lay with the city council, and it decided that this was not a case for the exclusive exercise of police power, or of the common law principle, but was proper for the exercise of eminent domain as well as police power.   Its decision is the law of this case, for when a discretionary power is reposed, and is exercised in good faith, such exercise is final and conclusive, unless an appellate tribunal be established for its review.   *Martin* v. *Mott*, 12 Wheat. 19; *U. S.* v. *Arrendando*, 6 Pet. 691.   This rule applies to the legislative power of eminent domain, the mode of exercise being left to the legislative discretion when not restrained by the Constitution.   Cooley on Con. Lim. (6th ed.), 648, 663; *Secombe* v. *Railroad Co.*, 23 Wall. 117; *Roanoke* v. *Berkowitz*, 80 Va. 619; *Tate's Exor.* v. *Cent. Lun. Asylum*, 84 Va. 271; 4 Thompson on Corp., secs. 5592, 5612. The exercise of either the taxing power, or eminent domain, in aid of the objects of police power is not unusual.   *Davidson* v. *New Orleans*, 96 U. S. 97; Cooley on Con. Lim. 629; *Dingley* v. *City of Boston*, 100 Mass. 544; *Sweet* v. *Rachel*, 159 U. S. 396, 399; *City of Newton* v. *Perry*, 163 Mass. 319; *Roanoke* v. *Berkowitz*, *supra;* V. C. (1860), ch. 56; V. C. (1873), ch. 56, sec. 6.   Wherever by reasonable construction the Constitution can be made to avoid an unrighteous exercise of police power, that construction will be up-

held.    Tiedeman's Lims. of Pol. Power, 210, sec. 3.    Private property is taken for public use when it is sacrificed to that use.    *Pumpelly* v. *Green Bay Co.*, 13 Wall. 177.    The city council having exercised its discretion as to the destruction of the property, the duty to be performed by the committees in carrying out the ordinance was simply ministerial.    In this respect the case is distinguished from *Bowditch* v. *Boston*, 107 U. S. 16.    The ordinance was not defective in not making a more specific provision for compensation to the individuals whose property was destroyed, for by pledging the faith of the city for the compensation all its resources were bound for the fulfilment of the obligation.    Upon judgment against the city, and execution thereon returned *nulla bona, mandamus* would lie to compel the levy of a special tax for the purpose of payment.    *Walkly* v. *Muscatine*, 6 Wall. 187; *U. S.* v. *Von Keck*, 6 Wall. 574; *U. S.* v. *New Orleans*, 98 U. S. 387; *Louisiana* v. *U. S.*, 103 U. S. 289; *Wolf* v. *New Orleans*, 103 U. S. 358.    Furthermore the emergency excused a more specific provision for compensation.    *People* v. *Hayden*, 6 Hill 359; *Sweet* v. *Rachel*, 159 U. S. 406.

3.    The absence of a receipt is no defence to this action.

It was so held in *City of Richmond* v. *Smith*, 15 Wall. 430, where the same point was raised alike in the pleadings and on the argument.    If the ordinance in question could be construed as exacting the giving of a receipt as a condition precedent to the liability of the city for just compensation for private property taken by eminent domain, the condition would be so unreasonable and unjust as to be *ultra vires* and void, and the obligation to pay would remain in full force. *Kirkham* v. *Russell*, 76 Va. 961.    The expression "giving receipts therefor," is merely directory to the agents of the city.    A receipt would not constitute conclusive evidence as to either citizen or city; it might be contradicted or explained.    1 Greenleaf, sec. 305; 2 Parsons on Contracts (5th

ed.), 555; Bishop on Con. (new ed.), sec. 176. Nor would it be exclusive evidence, as character, quality, and value would necessarily be proven by evidence *aliunde*, the receipt not showing these.

The property having been taken in the exercise of eminent domain nothing that the ministerial agents or executive officers of the city could do or leave undone could defeat the right to payment. *N. & W. R. Co.* v. *Dunnaway's Admr.*, 93 Va. 29; *Campbell* v. *United States*, 107 U. S. 407. And even if the receipt were a condition precedent to liability the city could not take advantage of its own failure to furnish it. *Williams* v. *Bank*, 2 Pet. 96; *Manhattan Ins. Co.* v. *Warrick*, 20 Gratt. 614; *Mutual Life Ins. Co.* v. *Atwood*, 24 Gratt. 497; *N. Y. L. Ins. Co.* v. *Hendren*, 24 Gratt. 540; *Conn. L. Ins. Co.* v. *Duerson*, 28 Gratt. 630; *N. Y. L. Ins. Co.* v. *White*, Ins. Law Jour. for December, 1873, page 917.

The obligation bears interest from the time the property was taken. *Mayor of New York* v. *Pentz*, 24 Wend. 673, and *Houck* v. *Dunham*, 92 Va. 211.

*C. V. Meredith*, for the appellee.

CARDWELL, J., delivered the opinion of the court.

This is a writ of error to a judgment of the Circuit Court of the city of Richmond.

The suit was brought in June, 1871, to recover of the defendants in error, the city of Richmond, the value of liquor claimed to have been the property of the plaintiff in error, of the alleged value of $30,000, destroyed during the night of April 2, 1865, but a few hours before the city was evacuated by the Confederate forces and entered by the Federal army.

The resolutions adopted by the council of the city at a called meeting of that body in the afternoon of April 2, 1865, and by authority of which it is alleged the liquor was destroyed, are as follows:

"1. Resolved, That it is the imperative duty of this council in case of the evacuation of the city by the government and army to provide as far as it can for the immediate destruction of the stock of liquor in the city.

"2. Resolved, That a committee of twenty-five citizens in each ward be appointed by the president to act in behalf of the city, and proceed at once to accomplish this object. That said committee destroy on the premises all the liquor they can find, giving receipts for the same to the holders.

"3. Resolved, That the faith of the city be and is hereby pledged for the payment of the value of all liquor so destroyed to the holders of said receipts."

After the adoption of the above resolution, the following resolution was offered and adopted:

"Resolved, That the committee under Mr. Burr's resolutions be instructed to proceed to carry them out when General Lee orders an evacuation of the city, but they shall at once, if practicable, remove the same to some warehouse where it can be guarded and destroyed when necessary."

The declaration contained a special count setting forth the facts (including the fact that the plaintiff was not given a receipt for his liquor), to which were added the common counts in assumpsit.

A demurrer was filed by the defendant to the declaration as a whole, and to each count thereof, which was sustained as to the special count, and overruled as to the common counts.

At the trial upon the plea of *non assumpsit*, November 27, 1893, the plaintiff offered in evidence a copy of the resolutions of the city council, and evidence tending to show that his liquor was destroyed in pursuance of the resolutions, and the amount and value thereof, but that the committee superintending the destruction failed to give a receipt for the same. To the introduction of this evidence, other than the copy of the resolutions, the defendant objected, on the ground that

the committee gave no receipt for the liquor so destroyed,' which objection the court sustained, and refused to permit this evidence to go to the jury, to which ruling the plaintiff excepted.   A verdict was then found for the defendant, and the plaintiff moved the court to set it aside, as contrary to the law and the evidence, and grant him a new trial, which motion the court overruled, and entered judgment for the de fendant, to which action of the court the plaintiff again excepted.

We do not deem it at all necessary to consider the questions of pleading and practice made by the record; nor the question whether or not it is essential to a recovery in the case that the plaintiff should have had the receipt contemplated in the resolutions.   Suffice it to say upon this question that we construe the expression in the resolutions, "giving receipts therefor," as merely directory to the committees appointed to superintend the destruction of the liquor, and as intended to furnish a convenient mode of evidence as to the property that might be destroyed; that such a receipt would not constitute conclusive evidence as to either the citizen or the city, for it could be contradicted or explained by either party, and therefore it could not be considered as a condition precedent to the liability of the city.   1 Greenleaf on Ev., sec. 305; Parsons on Contracts (5th ed.), 555; Bishop on Contracts (new), sec. 176.

The main question, indeed, we may say, the all absorbing question for our determination, is: Did the council have the right, under the law, to direct the destruction of the plaintiff's liquor and bind the city to pay him for it?

There are two adjudged cases that grew out of the destruction of liquor on the 2d of April, 1865, under the resolutions of the council set out above, and they are cited in support of the assignment of error to the judgment of the court below.

The one is *Jones* v. *City of Richmond*, decided by this court, and reported in 18 Gratt. 517; and the other *The City*

*of Richmond* v. *Smith,* decided by the Supreme Court of the
U. S., 15 Wall. 437.

We do not, however, understand that the decision in the
last named case has any controlling influence in the conside-
ration of the question before us.   At the trial of that case in
the lower court the defendant demurred to the declaration,
which demurrer was overruled; whereupon the defendant
offered two special pleas.   (1.) That the city never contracted
or assumed the debt, and (2.) that the property would have
been destroyed by fire on the morning of April 3, the
day of the evacuation, even if the committee had not poured
it out on the street during the night of the 2d.

The plaintiff took issue on the first plea, and demurred to
the second, which demurrer was sustained, and the case heard
upon the first plea by the judge, without a jury.   The court
gave the judgment against the city, and a writ of error was
awarded.

In the opinion of the Supreme Court, it clearly appears that
the court considered that under its rules notice could not be
taken of the issue under the first plea, or of the demurrer to the
declaration.   Indeed, the opinion says that "nothing is open
to examination in this case except the ruling of the court in
sustaining the demurrer of the plaintiff to the second plea of
the defendant."

In concluding its opinion, the Supreme Court uses the fol-
lowing language:

"Suppose, however, the exceptions to the judgment are
sufficient to raise the questions which the defendants desire
to present for decision, still the court would feel constrained
to affirm the judgment upon the ground that the Supreme
Court of the State have decided in an analogous case that the
corporate authorities of the city had authority under the
charter of the city to make the order for the destruction of the
liquors, and to give the pledge for payment, and that the de-
fendants are responsible for the value of the liquors destroyed

under that order.    State courts certainly have a right to expound the statutes of the State, and, having done so, those statutes, with the interpretation given to them by the highest court of the State, become the rules of decision in the federal courts."

It is obvious from this extract from the opinion of the Supreme Court that the opinion and judgment of this court was followed, without any independent investigation, as a correct interpretation of the statute of the State, and its decision adds nothing, therefore, to the authority of *Jones* v. *City of Richmond.*

In *Jones* v. *City of Richmond, supra,* it was contended for the city, "that the corporation was not liable on two grounds; First, because the destruction of these stores was the result of that urgent necessity which on common law principles deprive the sufferer of indemnity; and secondly, if not to be so regarded, it was an exercise of eminent domain, not pertaining to the corporation either by express or implied delegation of powers to that end, in its charter or the general laws of the State."    The court in its opinion, by Rives, J., does not discuss the first defence, but recognizing, as it would seem, the principle contended for, proceeds to maintain that whatever might be the common law rule as to indemnity from necessity for the act, yet, in the destruction of the liquor, the act itself was one of eminent domain.    It quoted from the charter the provision which authorized the council of the city "to pass all by-laws, rules and regulations, which they shall deem necessary for the peace, comfort, convenience, good order, good morals, health or safety of the city, or of the people or property therein;" also that provision prohibiting the city from "taking or using any private property for public purposes, without making to the owner or owners thereof, just compensation for the same," and held that the city was liable under those two provisions.

Referring to the provision of the charter first quoted, and

which is commonly known as the "general welfare" clause,
it is said: "It is hard to conceive of larger terms for the grant
of sovereign, legislative powers to the specified end than
those thus employed in the charter; and they must be taken
by necessary and unavoidable intendment to comprise the
power of eminent domain within those limits of prescribed
jurisdiction." No authorities are cited in support of the con-
struction given to the charter, and the opinion recognizes that
it is not sustained by the adjudged cases. The view taken
by the court was that, the "general welfare" clause having
conferred upon the city the power of eminent domain, there
were two modes open to the council;. First, to direct the
destruction of these stores, leaving the question of the city's
liability therefor to be afterwards litigated and determined;
or secondly, assuming their liability to contract for the values
destroyed under their order," and that, the council having
adopted the latter mode, it was made a matter of contract:
"In this," says the opinion, "they seem to be well justified.
They found themselves inhibited, by the terms of their char-
ter, sec. 49, from 'taking or using any private property for
public purposes, without making to the owner or owners
thereof just compensation for the same.' We are well aware
that an exception is taken in adjudged cases that such destruc-
tion is not within this language; but, coupled with the inherent
equity of such a course, this language was persuasive to the
actual agreement for payment, and should be accepted as a
probable and reasonable motive with the council."

While we recognize that one of the primary and fundamen-
tal capacities of a corporation is "to contract and to be con-
tracted with," we find ourselves wholly unable to concur in
the view taken by this court in *Jones' Case*, that the charter
of the city of Richmond in force April 2, 1865, conferred
upon the council of the city, the power and authority, in the
exercise of eminent domain, to direct the destruction of the
plaintiff's liquor, and bind the city by contract, or otherwise,
to pay for it.

Judge Dillon, in his work on Mun. Corporations, in a note to sec. 443, wherein the extent of the power of municipal corporations to make contracts is discussed, after citing numerous authorities in support of the view taken in the text, reviews the decision of this court in *Jones* v. *The City, supra,* and says: "Upon the general principles of construction, the author doubts whether the order for the destruction of the liquors was within the scope of the corporate powers of the city." Referring in this note to the decision of the Supreme Court of the United States in Smith's case, *supra,* this author says that the Supreme Court of the United States followed, without examination into its correctness, the exposition of the charter given by the State Court in *Jones* v. *Richmond, supra,* and refers to secs. 89, 90, and 91 of his work, where the rules of construction of charters of municipal corporations are discussed, and the adjudicated cases are cited.

In section 89 he says: "It is the general and undisputed proposition of law that *a municipal corporation possesses and exercises the following powers, and no others:* First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the declared ojects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied."

This rule is recognized in a great number of authorities cited, though stated in some of them in different form, but to the same effect.

The common law principle upon which the city relies in the case before us as giving the council, or any citizen, authority to destroy the liquors for the public good or the public safety, with exemption from liability, is not controverted on behalf of the plaintiff in error. It is the contention of his learned counsel that the liquor was destroyed in the exercise of the

right of eminent domain in aid of the police power of the city, and therefore the city is bound to pay its value. He does not claim that the requisite authority in the council was conferred in express terms in the charter, but by implication or intendment, under the rules of construction applicable.

The charter of the city of Richmond, in force April 2, 1865, contains the following provision, not usually found in such charters, viz:

"Sec. 97. This act shall be construed in relation to the powers conferred upon the city, as a remedial statute in favor of the city."

This provision of the charter seems to be greatly relied upon by plaintiff in error, and without doubt changes the rule of construction. The charters of municipal corporations are ordinarily to be strictly construed. By virtue of the provision under consideration the charter of the city of Richmond is to be construed liberally. It is, however, but a rule of construction. It is designed to ascertain the extent of the powers granted, and is in no sense in itself an independent grant or source of power. Where a doubt exists, as to whether or not a municipal corporation may exercise a particular power, that doubt must, under the rule requiring a strict construction of such instrument, be solved by denying the existence of the power,—see *City of Winchester* v. *Redmond*, 93 Va. 711— while under a rule requiring a liberal construction, such doubt would be solved in favor of the existence of the power; but it still remains that, in respect to the charter of Richmond, as of all other municipal charters, the power claimed must be conferred either in express terms, or by fair construction of, or inference from, the express grant of powers contained in the charter, and will not be presumed or assumed to exist. No reference to this provision is made in the case of *Jones* v. *The City of Richmond*, *supra*, and presumably it was not relied on in that case.

The right to appropriate private property to public use lies dormant in the State, until legislative action is had pointing out the occasions, the modes, conditions, and agencies for its appropriation. It cannot be presumed that any corporation has authority to exercise the right of eminent domain until the grant is shown. Cooley's Const. Lim. (4th Ed.), p. 657, and authorities cited in note 1.

Section 49 of the charter of Richmond city, from which the opinion in *Jones* v. *City of Richmond, supra,* quotes the provision relative to taking private property for public uses, &c., is as follows:

"The council shall not take or use private property for streets or other public purpose, without making to the owner or owners thereof, just compensation for the same. But in all cases where the said city cannot by agreement obtain title to the ground necessary for such purposes, it shall be lawful for the city to apply to and obtain from the court of the county of Henrico, or the Circuit Court thereof, if the subject proposed to be condemned lies in said county, or to the court of Hustings held by the judge thereof, or the Circuit Court of the city, if the subject lies within the city, for authority to condemn the same, which shall be applied for and proceeded with as provided by law."

This is the only provision in the charter conferring upon the city the power of eminent domain. The power is here granted for a certain and well defined purpose, and is to be exercised under prescribed conditions, viz: when the city needs "ground for the purpose of opening or extending its streets," or for other public purposes, and is unable to acquire title to it by agreement with the owner.

In construing statutes the legislative intent is to be looked to, and it would therefore seem an irresistible conclusion that if it had been the intention of the Legislature to confer upon the city of Richmond, by its charter enacted March 18, 1861, and in force April 2, 1865, the power to exercise the right of

eminent domain in the taking or destruction of any property for public uses other than land, it would have been conferred in terms as explicit and as well defined as the power to take land for the uses of the city is conferred in sec. 49 of the charter. Certain it is, that that section was never intended to apply to the destruction of liquor.

In *City of Winchester* v. *Redmond, supra*, it was held that, in the absence of express authority by its charter or by general law, the council of the city of Winchester had no authority to offer a reward for the detection of criminals; that authority to do so cannot be implied from the "general welfare" clause of its charter. It was said by RIELY, J., who delivered the opinion of the court in that case, when referring to the "general welfare" clause in the charter of Winchester, which is almost in the very words of that clause in the charter of Richmond: "This language, though very broad, is yet not without its proper limitation. It is to be construed with reference to the object contemplated by the State in the grant of the charter, and the extent of the power it confers is to be measured and limited by the purposes for which the corporation was created. A municipal corporation is a local and subordinate government, created by the sovereign authority of the State, *primarily* to regulate and administer the local and internal affairs of the city or town incorporated, in contradistinction to those matters which are common to and concern the people at large of the State. And it is only in regard to the local and internal affairs of the city that its council, unless expressly authorized, has the right to legislate."

It was said by Staples, J., in *Burch* v. *Hardwicke*, 30 Gratt. 34; "When the mob rages in the streets, when the incendiary and the assassin are at work, they do not offend against the city, but against the State." Again, "The administration of justice, the preservation of public peace, and the like, although confided to local agencies, are essentially

Opinion.

matters of public concern, while the enforcement of municipal by-laws, the establishment of gas-works, of water-works, the construction of sewers, and the like, are matters which pertain to the municipality, as distinguished from the State at large.''

Had the liquors in the city been destroyed by authority of the State to keep them out of the hands of the invading army, no recovery of its value could have been had by its owners, but the resolutions of the council clearly show that the liquors were ordered to be destroyed in anticipation of riot, lawlessness, and the mob, the suppression of which pertains to the sovereign power of the State, though confided to local agencies, the officers of the city. Under these circumstances and surroundings the council of the city undertake the destruction of all liquors within the limits of the city, and to pledge the faith of the city to pay for them. The power to do this, is not, in our opinion, necessarily or fairly implied in any express power granted to the city, and its possession was not indispensable to the performance of its corporate duties, or the accomplishment of the purposes of its incorporation, whether the provisions of its charter be construed liberally, or according to the general rules of construction applicable to such statutes.

Counsel for plaintiff in error brings to our attention an act of the Legislature passed February 12, 1863 (Acts 1862-'3, p. 106), which it is claimed escaped the attention of the court and counsel in the *Jones case,* and it is contended that this act conferred upon the city council of Richmond authority to do exactly what it did on the 2d of April, 1865. The title of the act is:

"An act to enlarge the powers of the council of the city of Richmond."

The act provides that the council of the city be and the same is hereby authorized to suppress riots, and unlawful assemblies in the said city; to suppress gaming and gambling houses, tippling, and to prevent and regulate the sale of spirit-

uous and fermented liquors within the said city, and around the same to the boundaries within which the jurisdiction of its corporation courts or officers of police extends in criminal cases; that for the purpose of executing the powers and authority thereby vested in said council, the council might enact ordinances and impose penalties for the violation thereof, by fine and imprisonment; might authorize and empower the proper officers and police of the city to seize such liquors, sold or kept for sale, for the use of the city, and shut up the houses in which such liquors are kept, &c.; and that the officers and police of the city should have the same powers and authority in discharging their duties under such ordinances as State officers have in cases of breach of the peace.

Section 2 confers authority upon the council to establish armed police and appoint officers thereof, &c.

The prime object of this statute, and its legal force and effect, were to enlarge the police power of the city, and to extend this power beyond the limits of the city to the limit of the city's criminal jurisdiction, and for a specific purpose, viz: "to suppress gaming and gambling houses, tippling houses and such like."

There is, neither in express terms nor by fair and reasonable construction, conferred upon the council of the city by this act, the power to destroy the property of its citizens and bind the city to pay for it. The taking and holding liquors for the use of the city, authorized by the act, was clearly a part of the penalty authorized to be imposed for the violation of the laws or ordinances regulating the sale of liquors or prohibiting gambling houses, tippling houses, and the like.

Two adjudicate1 cases in point are cited in support of the position that the power of eminent domain may be exercised in aid of the police power; the one is *Dingley* v. *City of Boston*, 100 Mass. 544; and the other *Sweet* v. *Rachel*, 159 U. S. 396; but both of these cases arose in the State of Massachusetts, where there is a statutory system authorizing and regu-

lating the exercise of eminent domain in aid of the police power. We have no such statutes in Virginia. Moreover, if such were the case, there could be no exercise of the right of eminent domain in aid of the police power, unless the power of eminent domain was conferred upon the city by its charter or the general statutes of the State. Our view is that the right of eminent domain was not so conferred upon the city by its charter or general statutes as to authorize it to take or destroy the liquors within its limits on April 2, 1865, in aid of the police power or otherwise, and being without this power the promise to pay was *ultra vires*, and therefore void.

Against the liabilty of the city in the case at bar, the authorities are numerous, and we may say the line unbroken, except by the decision in the *Jones case*—a decision founded upon a construction of the charter of the city unsustained by any authority cited. Among the authorities to which we refer are the following: 1 Dil. Mun. Cor. (3d ed.), secs. 89, 90, and 91, and cases cited; Cooley's Con. Lim. (6th Ed.), 231-2, and cases cited; *Republica* v. *Sparhawk*, 1 Dal. 357; *Coats* v. *The Mayor, &c.*, 7 Cowan 585; Sedgwick's Con. & Stat. Law (2d Ed.) 434; *Parham* v. *The Justices*, 9 Geo. 341; *Print Works* v. *Lawrenee*, 23 N. J. Law, 615; *Mayor* v. *Ray*, 19 Wall. 468; *Mayor* v. *Lord*, 18 Wend. 126; *People, &c.* v. *Common Council*, 76 N. Y. 361; *Smith* v. *Newburgh*, 77 N. Y. 136; *Ravernna* v. *Penn. Co.* 45 Ohio St. 118; *Henke* v. *McCord*, 55 Iowa 381; *Keller* v. *Corpus Christi*, 50 Tex. 614 and 629; *Russell* v. *Mayor*, 2 Denio 461; *City of Fort Worth* v. *Crawford*, 64 Tex. 202; *Summerville* v. *Dickerman*, 127 Mass. 272; *Eufaula* v. *McNab*, 67 Ala. 590; *McDonald* v. *Redwing*, 13 Minn. 38-9; *Dunbar* v. *Alcade*, 1 Cal 355-6 and 358; *Taylor* v. *Nashville, &c., R. R. Co* , 6 Coldwell 646; *Field* v. *City of Des Moines*, 18 Amer. R. 46; *Taylor* v. *Inhabitants, &c.*, 8 Metcalf 465; *Harrison* v. *Wisdom et als*, 7 Heisk. 99; *Bowditch* v. *Boston*, 101 U. S. 19, 20; *United States* v. *Pac. R. Co.*, 120 U. S. 227, 234.

As we cannot concur in the construction of the charter of Richmond given in *Jones' case*, and are unwilling to disagree with the unbroken line of authorities cited, the judgment of the court below in the case at bar must be affirmed.

*Affirmed.*