## Wytheville.

### CITY OF RICHMOND V. PACE, TREASURER.

#### June 10, 1920.

1. STATUTES—*Title—Object.*—The rulings of the courts construing constitutional provisions to the effect that a statute shall embrace no more than one object, which shall be expressed in its title, have impressed the word "object" with a very comprehensive meaning, which repels the contention that the provisions of an act in aid of and related to the purpose expressed in its title are separate objects, and therefore unconstitutional. The body of most general acts contains many provisions in detail, intimately related to the main purpose of the act, but not expressed in the title. Indeed, to incorporate or mention them all in the title would make many titles of intolerable length.

2. STATUTES—*Object of Statute Must be Expressed in Title—Provisions in Furtherance of General Purpose.*—The fact that an act authorizes many things of a diverse nature will not affect the sufficiency of the title, provided these provisions may be reasonably regarded as in furtherance of the general subject of the enactment.

3. STATUTES—*Object Expressed in Title—Construction of Constitutional Provision.*—Section 52 of article 4 of the Constitution of 1902, which provides that "no law shall embrace more than one object, which shall be expressed in its title," etc., like other constitutional provisions, should receive a rational construction, and not one that would lead to a destructive result.

4. STATUTES—*Title—Notice of General Subject of Act.*—The title of an act of the General Assembly is sufficient if it gives notice of the general subject of the act, and of the interests likely to be affected thereby. If the subjects embraced by the act, but not specified in the title, have congruity, or natural connection, with the subjects stated in the title, or are cognate, or germane, thereto, the requirement of the Constitution "that no low shall embrace more than one object, which shall be expressed in the title," is satisfied.

5. STATUTES—*Title—"Object" and "Subject."*—The words "object" and "subject" are taken to have one and the same significa-

tion in constitutional provisions, that a statute shall embrace
no more than one object or subject, which shall be embraced
in the title.

6. STATUTES—*Title—Segregation Act, Subsection 2b.*—Subsection
2b of the Segregation Act (act of March 15, 1915), which pro-
vides that on the "real estate, personal property, public ser-
vice corporations or other taxes heretofore received by the
° State, but hereafter to be collected for local purposes, the
treasurers of the cities, counties and towns shall be paid by
the cities, counties and towns the same commissions as now
allowed by law for the collection of State revenue," is cognate
and germane to the object of the statute, as stated in the title,
which was "An act to segregate, for the purposes of taxation,
pursuant to section 169 of the Constitution of Virginia, the
several kinds and classes of property, so as to specify and
determine upon what subjects State taxes, and upon what sub-
jects local taxes may be levied, and to provide," etc.

7. STATUTES—*Title—Segregation Act, Subsection 2b.*—It was mani-
fest from the title of the segregation act that the radical
changes in the taxing system of the State which it indicated,
would affect to a material, and for the time being an unknown
and undetermined, degree the salaries of county, city, and town
officials concerned with the assessment, collection, and disburse-
ment of the levies under the new system, and deriving their
compensation in large measure from a commission on the sub-
ject-matter. The title gave notice to these officials, in plain
and unmistakable terms, that "their interests were likely to
be affected."

8. STATUTES—*Presumption in Favor of Constitutionality.*—An act of
the General Assembly is presumed to be valid until its viola-
tion of the Constitution is proved beyond all reasonable doubt.

9. SEGREGATION ACT—*Validity of Subsection 2b—Power of Legis-
lature to Increase Compensation of City Treasurer —Bonus.*—
However much the segregation act may have increased the
work of the plaintiff, his duties and responsibilities as treas-
urer of the city of Richmond, he was not entitled merely on
that account to sue the city, on a *quantum meruit* or other-
wise, for additional compensation. But it was competent for
the General Assembly, in view of the effect of its statute upon
the responsibilities and work of that official, in his city or
local capacity, to require the city to increase his compensation.
The authority of the act, and not his increase of duties and
responsibilities, or his loss of compensation, afforded his right
to sue the city. Subsection 2b provides the measure and
extent of his recovery. The increase of compensation for
which it provides is in no sense a bonus.

10. PUBLIC OFFICERS—*Increase of Duties—Compensation.*—The law is plain that the duties of an office may be changed and enlarged, without entitling the encumbent to sue for additional remuncration.   He has but one remedy under the circumstances, and that is the remedy of resignation.

11. STATE—*Power of Legislature—Limitations of Legislative Authority over Municipal Corporations.*—A State government is an independent existence, representing the sovereignty of the people.   The power of the legislature is the power of that sovereignty, and, as a general proposition, is supreme in all respects and unlimited in all matters pertaining to legitimate legislation.   Limitations of the legislative authority over municipal corporations must be sought either in the National or State Constitution.

12. MUNICIPAL CORPORATIONS—*Power of Legislature—Imposing Debt or Liability on Corporation Without its Consent.*—If there is no special limitation in the Constitution, and the debt or liability is one to be incurred in the discharge of a public or State duty, which it is proper for the legislature to impose upon the municipality, it can constitute no objection to the validity of the act that the debt or liability is to be created without its consent.   The fact that a claim against a municipal corporation is not such an one as the law recognizes as of legal obligation, forms no constitutional objection to the validity of a law imposing a tax and directing its payment.

13. MUNICIPAL CORPORATIONS—*Power of Legislature to Levy Tax to Satisfy Claim Against Municipality.*—The legislature has the power to levy a tax upon the taxable property of a town and appropriate same to the payment of a claim made by an individual against the town.   It can direct the proper authorities of a town to assess a tax, cause the same to be collected and apply it in discharge of such a claim, even though the claim has been rejected by the voters of the town, and though the claim is not recoverable by action against the town.

14. STATE—*Appropriations—Power of Legislature.*—Independently of express constitutional restrictions, the legislature can make appropriations of money whenever the public well-being requires or will be promoted by it, and it is the judge of what is for the public good.   It can recognize claims founded in equity and justice in the largest sense of those terms.

15. STATUTES—*Repeal—Effect of Repeal of Statute Authorizing Compensation of City Treasurer.*—Where the treasurer of the city of Richmond had rendered the services for which subsection 2b of the segregation act had provided that compensation should be paid, his right to recover such compensation

against the city under subsection 2b became fixed; and his right of action is not affected by the fact that at the time he instituted his motion against the city an amendment to subsection 2b had in effect repealed the subsection, *quoad* the treasurer of the city of Richmond; though a repealing statute, enacted while the plaintiff's rights were inchoate and executory, would of course have been effective to defeat the plaintiff's action.

16. SEGREGATION ACT, SUBSECTION 2b—*Compensation of City Treasurer—Treasurer who does not Collect Taxes.*—There being nothing in the broad language of subsection 2b of the segregation act to indicate that the General Assembly intended to exclude from its benefits a treasurer who did not collect the city taxes, the enactment of an amendment to the subsection does not support, much less establish, the contention that it was the original intent to confine the operations of the subsection to the treasurers who collected the local revenues. The subsection must be construed according to familiar and well established principles of statutory construction, and not in the light of a subsequent amendment or repeal.

17. STATUTES—*Repeal of Special Act Without Special Reference to it —Subsection 2b, Segregation Act.*—Subsection 2b of the segregation act providing for compensation for city treasurers by the city for taxes collected for local purposes, is not unconstitutional as effecting the repeal, without special reference to the same, of a special act of the General Assembly, and an ordinance of the council of the city of Richmond passed in pursuance thereof, fixing the compensation of the treasurer of the city of Richmond. The sole effect of subsection 2b, as related to the city of Richmond and construed by the lower court, has been to impose upon the city the obligation to provide an additional emolument to the treasurer, in view of the changed situation created by the operation of the main provisions of the segregation act. The imposition of this obligation upon the city, and the ascertainment of the amount to be paid in discharge of this obligation, in no wise repeal any city ordinance or State law.

Error to a judgment of the Law and Equity Court of city of Richmond, in a proceeding by motion for a judgment for money.  Judgment for plaintiff.  Defendant assigns error.

*Affirmed.*

The opinion states the case.

*H. R. Pollard,* for the plaintiff in error.

*Jo Lane & Cary Ellis Stern* and *C. M. Chichester,* for the defendant in error.

SAUNDERS, J., delivered the opinion of the court.

This case is brought before us by a writ of error to the judgment of the Law and Equity Court of the city of Richmond, entered on May 6, 1919, in favor of the plaintiff for the sum of $2,777.91 and interest, in a proceeding by way of motion of *J. B. Pace* v. *City of Richmond,* to recover the above amount, alleged to be due him by virtue of the provisions of an act of the General Assembly.

The act upon which this motion is based, and which is necessary to be considered in this connection, is the act of March 15, 1915 (laws 1915, c. 85). This act (commonly known as the segregation act) rearranges to a considerable extent the subjects of State and local taxation. The following subjects are made subject to local taxation only, to-wit: All taxable real estate, all taxable tangible personal property, as enumerated in section 6, Schedule B, of an act entitled, "An act to raise revenue for the support of the government and public free schools, to pay the interest on the public debt, and provide a special tax for pensions, and so forth," and also the tangible personal property of public service corporations (except the rolling stock of corporations operating railroads by steam). The State school tax of ten cents on the hundred dollars on the assessed value of real estate and tangible personal property is continued until changed by law.

Subsection two-b of this act provides that on the real estate, personal property, public service corporations, or

other taxes formerly received by the State, but hereafter to be collected for local purposes, the treasurers of the counties, cities and towns shall be paid by such counties, cities and towns the same commissions as now allowed by law for the collection of the State revenues.

James B. Pace, who was the treasurer of the city of Richmond at the time the above act was passed, filed his motion on February 10, 1919, against the city for the sum of $2,-771.91 and interest, claiming that this amount was due him from the city by virtue of the subsection cited *supra,* in order to constitute the same commissions for the year 1915 as were allowed by law prior to the fiscal year 1915 for the collection of the State revenues. With this motion the plaintiff filed a statement showing how the precise sum claimed was ascertained. This statement is as follows:

"Account showing commissions received by J. B. Pace, treasurer of the city of Richmond, for collection of taxes for the fiscal year 1915, under the law known as the segregation of taxes act, and the commissions he would have received for the same year under the law existing prior to the adoption of said act, on real estate, tangible personal property, and intangible personal property, and the loss in commissions sustained by the said J. B. Pace, resulting from the changes in the law made by the said act.

"Commissions received on $95,725.19, amount collected on Real Estate at ten cents per $100 assessed value in 1915, under law known as segregation act, at 2% ..........................$1,914.50

"Commissions which would have been received in 1915 real estate at rate of thirty-five cents per $100 assessed value, if no change had been made in the law ..........................                    $6,700.76

"Commissions received on $6,452.09,

amount collected on tangible personal
property at ten cents per $100 assessed
value in 1915, at 2%.............$  129.04

"Commissions which would have been
received in 1915 on tangible personal
property at rate of thirty-five cents
per $100 assessed value, if no change
had been made in the law ..........                $   451.64

"Commissions received on $256,582.23,
amount collected on intangible per-
sonal property at rate of sixty-five
cents per $100 assessed value in 1915,
at 2%  ..........................  5,194.64

"Commissions which would have been
received in 1915 on intangible personal
property at flat rate of thirty-five cents
per $100 assessed value, if no change
had been made in the law..........$7,175.18 2,800.69

                                                $9,953.09

"Total amount of commissions lost by
J. B. Pace, as result of segregation
act  ...........................$2,777.91"

The city of Richmond resisted this motion on various
grounds that were set out in the statement of its grounds
of defense.

The determinations of this controversy involves the con-
stitutionality and interpretation of the subsection cited,
*supra.* The points raised will be disposed of substantially
in the order in which they are discussed in the brief of the
plaintiff in error. The first error assigned is that subsec-
tion 2b is a portion of the segregation act not expressed
in its title, and, therefore, unconstitutional by virtue of
section 52 of Article 4 of the Constitution of the State of
Virginia.

This section provides that "No law shall embrace more than one object, which shall be expressed in its title; nor shall any law be received, or amended, by reference to its title, but the act revived, or the section amended, shall be enacted and published at length."

[1, 2]   This particular section of the present Constitution is taken from the Constitution which preceded it, and has been frequently construed by the court of last resort in this State.   In its decisions our court has followed the rulings made by the courts of many other States, construing a like constitutional provision.   Hence, the construction of this section of the present Constitution is well established, but its application at times is difficult.   These rulings have impressed the word "object" with a very comprehensive meaning, which repels the contention that the provisions of an act in aid of and related to the purpose expressed in its title are separate objects, and therefore, unconstitutional.   The body of most general acts contains many provisions in detail, intimately related to the main purpose of the act, but not expressed in the title.   Indeed, to incorporate or mention them all in the title would make many titles of intolerable length.   If each of such provisions are to be regarded as a separate and different "object," then all save one would be unconstitutional, even though mentioned in the title.   According to such a rule of interpretation, it would follow that a general act, such as the act to create a "State advisory board of taxation," would be limited to establishing the board.   The powers and duties of the board could not be defined and included in the main act.   If such additional provisions may be fairly considered to be parts of the "object" of an act, then they need not be expressed in the title, but if not parts of the "object," then expression in the title would not validate, or render them constitutional.   The fact that an act authorizes many things of a diverse nature will

36

not affect the sufficiency of the title, provided these provisions may be reasonably regarded as in furtherance of the general subject of the enactment.

"It would be a violation of the spirit and letter of this constitutional safeguard, if such a construction should be put upon it as would forbid the incorporation into the law of everything needful to the proper operation of the one subject to which it is limited." *Ex parte Upshaw,* 45 Ala. 234.

[3, 4] This section, like other constitutional provisions, should receive a rational construction, and not one that would lead to a destructive result. One of the leading cases under this head in the Virginia Reports is the case of *Ingles* v. *Straus,* 91 Va. 209, 21 S. E. 490, a case often cited because it affords a very lucid and comprehensive treatment of this subject. That case, following the uniform current of the precedents, announces the following rule, in which this court fully concurs: "The title of an act of the General Assembly is sufficient if it gives notice of the general subject of the act, and of the interests likely to be affected thereby. If the subjects embraced by the act, but not specified in the title, have congruity, or natural connection, with the subjects stated in the title, or are cognate, or germane, thereto, the requirement of the Constitution that no law shall embrace more than one object, which shall be expressed in the title, is satisfied." *Ingles* v. *Straus,* 91 Va. 209, 21 S. E. 490 (Syllabus).

This case cites approvingly the case of *Johnson* v. *Harrison,* 47 Minn. 575, 50 N. W. 923, 28 Am. St. Rep. 382, from which it makes the following citation: "The subject of an act may be as comprehensive as the legislature chooses to make it, provided it constitutes, in the constitutional sense, a single subject, and not several. The connection or relationship of several matters such as will render them germane to one subject and to each other can be

of various kinds, as for example of means to ends, of different subdivisions of the same subject, or that all are designed for the same purpose, or that both are designated by the same term.   It is not necessary that the connection, or relationship, shall be logical; it is enough if the matters are connected with and related to a single subject, in popular signification.   The generality of the title of an act is no objection, provided only that it is sufficient to give notice of the general subject of the proposed legislation and of the interests likely to be affected." *Ingles* v. *Straus,* 91 Va. p. 216, 21 S. E. 490.   See also the cases cited in the same connection.

[5]   An act to increase the "boundaries of a county," may embrace provisions for extending the borders of the county, locating the seat of justice, and accepting donations for public buildings. *Id.* 91 Va. p. 217, 21 S. E. 409. The words, "object" and "subject" are taken to have one and the same signification. *Id.* 91 Va. p. 215, 21 S. E. 490.

[6, 7] The segregation act allocates to the counties, cities and towns large groups of taxables for local taxation only.   Other groups are reserved exclusively for State taxation.   The title of the act is, "An act to segregate for the purposes of taxation, pursuant to section 169 of the Constitution of Virginia, the several kinds and classes of property, so as to specify and determine upon what subjects State taxes, and upon what subjects local taxes may be levied, and to provide," etc.   It was manifest from this title that the radical changes in the taxing system of the State which it indicated would affect to a material, and for the time being an unknown and undetermined, degree the salaries of county, city and town officials concerned with the assessment, collection and disbursement of the levies under the new system, and deriving their compensation in large measure from a commission on the subject

matter. The title gave notice to these officials, in plain and unmistakable terms, that "their interests were likely to be affected."

Subsection 2b, cited *supra*, provides that on the "real estate, personal property, public service corporations, or other taxes heretofore received by the State, but hereafter to be collected for local purposes, the treasurers of the counties, cities and towns shall be paid by the counties, cities and towns the same commissions as now allowed by law for the collection of State revenue." This provision for the compensation of the officials affected by the re-grouping of the taxables for the respective purposes of State and local revenue, is certainly cognate and germane to the object of the act, as stated in the title, and has congruity and natural connection therewith.

[8] For the reasons stated, and for the further reason that an act of the General Assembly is presumed to be valid until its violation of the Constitution is proved beyond all reasonable doubt (*Ogden* v. *Saunders,* 12 Wheat. 213, 6 L. Ed. 606), the court concludes that subsection 2b is an integral and constitutional provision of the segregation statute.

[9, 10] 2. It is earnestly insisted that the plaintiff, James B. Pace, was not entitled to recover against the city of Richmond in his motion, cited *supra,* on the further ground that at the time be filed his motion he was paid a fixed salary of $2,040, annually, for services rendered to the city, and that his salary derived from the city was not affected by the transfer to the city of Richmond, for local taxation, of the subjects formerly taxed by the State. This being so, it is contended that any additional compensation required to be paid to the treasurer by the city of Richmond (in excess of the salary fixed by ordinance), and intended by the General Assembly to compensate the treasurer for the reduction of his State commissions re-

sulting from the transfer of taxables provided by the segregation act, would be, *quoad* the city, a bonus, and not compensation for a consideration.

Authorities are cited to the effect that it is beyond the power of the General Assembly to require a municipal corporation to pay any official a bonus. The validity of these authorities may be conceded, but they are not relevant in this connection. The segregation act set aside for local taxation by the city of Richmond all taxable real estate in the city and certain tangible personal property save as to ten cents on every hundred dollars of the assessed value of said real estate and tangible presonal property. The taxes on the property so segregated and set apart for local taxation were, and are, collected by the city collector, but are paid over to and disbursed by the city treasurer. It is plain that the receipt and disposition of the increased revenues flowing into his office under the act *supra* increases the duties and responsibility of the treasurer, and the work of his office force. It was impossible to ascertain in advance the precise extent of this increase of work and responsibility, but it was perfectly clear that the city treasurer would suffer a very definite loss of compensation, *quoad* the State. As a matter of law, neither the State of Virginia nor the city of Richmond was under any compulsion to remunerate the treasurer for this unexpected loss of compensation. It may be contended that the General Assembly, having effected by the direct force of its act a reduction of the treasurer's salary, was under some sort of moral obligation to afford the compensation that would restore the *status quo ante* in that respect. But this is not a question of equity, or propriety of action, but of statutory construction and legislative authority.

However much the segregation act may have increased the work of the plaintiff, his duties and responsibilities as treasurer of the city of Richmond, he was not entitled

merely on that account to sue the city, on a *quantum meruit* or otherwise, for additional compensation. But it was competent for the General Assembly, in view of the effect of its statute upon the responsibilities and work of that official, in his city or local capacity, to require the city to increase his compensation. The authority of the act, and not his increase of duties and responsibilities, or his loss of compensation, afforded his right to sue the city. Subsection 2b provides the measure and extent of his recovery. The increase of compensation for which it provides is in no sense a bonus. Apart from the compelling force of the act, the city, as pointed out, was under no constraint to afford an increase of compensation. The law is plain that the duties of an office may be changed and enlarged, without entitling the incumbent to sue for additional remuneration. He has but one remedy under the circumstances, and that is the remedy of resignation. But the right of the plaintiff, in this instance, rested upon the plain provision of the statute that the commissions provided by law for the treasurers of counties, cities and towns for the year 1915, on the taxes theretofore collected for the State, should, in view of the changed situation created by the segregation statute, be paid to the treasurers of the counties, cities and towns by said counties, cities and towns.

The Supreme Court of the United States has declared, "that a municipal corporation, in the exercise of all its duties, including those most directly local or internal, is but a department of the State. The legislature may give it all the powers such a being is capable of receiving, making it a miniature State in that locality, or it may strip it of every power, leaving it a corporation in name only; and, it may create or recreate these changes as often as it chooses, or itself may exercise directly within the locality any or all the powers usually committed to a municipality."

1 Dillon (6th ed.), sec. 98, p. 154. This ruling has been followed in most of the States of the Union.

[11] A State government is an independent existence, representing the sovereignty of the people. The power of the legislature is the power of that sovereignty, and, as a general proposition, is supreme in all respects and unlimited in all matters pertaining to legitimate legislation.

This being so, it is evident, as stated in Dillon, *supra*, sec. 108, that limitations of the legislative authority over municipal corporations must be sought either in the national or State Constitution.

[12] We have been cited to no limitations that affect the legislative authority to direct the payment of the commissions provided for in subsection 2b. If there is no special limitation in the Constitution, and the debt or liability is one to be incurred in the discharge of a public or State duty, which it is proper for the legislature to impose upon the municipality, it can constitute no objection to the validity of the act that the debt or liability is to be created without its consent. The legislature may direct a municipal corporation to build a bridge over a navigable water course within its limits, or the State may appoint agents of its own to build it, and empower them to create a loan to pay for the structure, payable by the corporation. *Id.* (Dillon), sec. 121.

The fact that a claim against a municipal, or public, corporation is not such an one as the law recognizes as of legal obligation, has often been decided by courts of the highest respectability and learning to form no constitutional objection to the validity of a law imposing a tax and directing its payment. *Id.* (Dillon), sec. 123.

[13] The legislature has the power to levy a tax upon the taxable property of a town and appropriate same to the payment of a claim made by an individual against the town. It can direct the proper authorities of a town to

assess a tax, cause the same to be collected and apply it in discharge of such a claim, even though the claim has been rejected by the voters of the town, and though the claim is not recoverable by action against the town.

[14] Independently of express constitutional restrictions, the legislature can make appropriations of money whenever the public well-being requires or will be promoted by it, and it is the judge of what is for the public good. It can recognize claims founded in equity and justice in the largest sense of those terms. *Town of Guilford* v. *Supervisors,* 13 N. Y. 143, 149.

In view of the weighty authority of these citations, and on principle and reason, the court is satisfied that the act directing the payment of the commissions in controversy by the city of Richmond was a valid exercise of legislative authority.

[15]  3. Another ground of objection urged by the plaintiff in error to the plaintiff's right to recover is, that at the time he instituted his motion, the amendment to subsection 2b had in effect repealed the subsection, *quoad* the treasurer of the city of Richmond. But this amendment did not affect the plaintiff's action, for the manifest reason that the services for which the subsection had provided that compensation should be paid had been rendered to the city during the year 1915, and prior to the passage of the amendment.

The services for which the compensation was directed to be paid, having been performed, the plaintiff's right to recover under subsection 2b of the segregation statute became fixed, and could not be disturbed, even by a statutory amendment specifically designed to affect the abrogation of the entire subsection. A repealing statute, enacted while the plaintiff's rights were inchoate and executory, would of course have been effective to defeat the plaintiff's action.

[16]   4. The plaintiff in error contends further, that the law and equity court erred in construing subsection 2b to apply to the situation presented in the city of Richmond, and insists that the subsection, properly construed according to its true intent and meaning, did not contemplate the payment of the commissions prescribed to the treasurers who did not collect the local taxes. In aid of this contention, the amendment to subsection 2b is cited to show the original legislative intent in the enactment of the subsection.

There is nothing in the broad language of the subsection to indicate that the General Assembly intended to exclude from its benefits a treasurer who did not collect the city taxes. Obviously, the enactment of the amendment to the subsection does not support much less establish, the contention that it was the *original* legislative intent to confine the operations of the subsection to the treasurers who collected the local revenues. The subsection must be construed according to familiar and well established principles of statutory construction, and not in the light of a subsequent amendment or repeal.

[17]   5. The final assignment of error to be considered is the contention that the subsection, *supra,* as construed by the judge of the Law and Equity Court of the city of Richmond, effects the repeal, without special reference to the same, of a special act of the General Assembly, and an ordinance of the council of the city of Richmond passed in pursuance thereof and having the same force and effect as an act of the General Assembly.

(This ordinance prescribes the duties and fixes the compensation of the treasurer of the city of Richmond). With this contention we cannot agree. The judgment of the law and equity court in no wise affects the city treasurer, either in respect of his duties, or his compensation. The status and relationship of the treasurer to the city has not

37

been changed. The sole effect of subsection 2b, as related to the city of Richmond and construed by the trial court, has been to impose upon the city the obligation to provide an additional emolument to the treasurer, in view of the changed situation created by the operation of the main provisions of the segregation act. The imposition of this obligation upon the city, and the ascertainment of the amount to be paid in discharge of this obligation, in no wise repeal any city ordinance, or State law.

On the whole, we find no error in the proceeding complained of, and the judgment of the law and equity court is affirmed.

*Affirmed.*