# Staunton.

## Town of Bluefield, Virginia, v. W. B. Dunn.

### September 22, 1927.

1. MUNICIPAL CORPORATIONS—*Treasurers—Compensation since the Passage of the Segregation Acts—Code of 1919, Section 2431.*—Code of 1919, section 2431, provides that on taxes heretofore received by the State but hereafter to be collected for local purposes, "the treasurers of cities, counties and towns shall be paid by the cities, counties and towns the same commissions as now allowed by law for the collection of State revenue." The treasurers having by the segregation acts (Acts 1915 [Ex. Ses.] chapter 85; Acts 1920, chapter 249) been deprived of a substantial part of their compensation previously received from the State, the purpose of the statute was to maintain the rate of compensation of those treasurers whose remuneration had been so reduced. The act has no reference to treasurers whose total compensation was not reduced as a consequence of the segregation acts.

2. MUNICIPAL CORPORATIONS—*Remuneration of Treasurer—Treasurer Suffering no Diminution of Compensation by the Segregation Acts—Code of 1919, Section 2431—Case at Bar.*—The instant case was an action by a town against a former treasurer for funds collected during his term of office and not paid over. By an ordinance passed before the treasurer's term began the salary of the treasurer was fixed at a stated sum per annum and no later ordinance had been passed fixing the salary of the treasurer. The treasurer claimed that in lieu of the salary previously fixed he was entitled to "the commissions provided by the general law" for his services under section 2431 of the Code of 1919. The treasurer suffered no diminution of compensation in consequence of the segregation acts (Acts 1915 [Ex. Ses.] chapter 85; Acts 1920, chapter 249), as neither before nor since their enactment did he ever collect any State taxes.

   *Held:* That section 2431, Code of 1919, was inapplicable to the instant case, hence an instruction that since it appeared that during the term of the treasurer the town had not fixed his salary by ordinance or resolution, the treasurer was entitled as compensation to the commissions provided by the general laws of the State, was erroneous.

3. MUNICIPAL CORPORATIONS—*Action Against Treasurer by Municipality—Evidence—Case at Bar.*—In an action against a town treasurer by the town for collections made by the treasurer during his term, the treasurer claimed compensation for services, many of which were incidental to his office, and all of which were voluntary and unsupported by either contract or ordinance. Over the objections of plaintiff the court permitted the introduction of testimony to the effect that these services were reasonably worth the amounts charged by the treasurer. At the conclusion of the testimony plaintiff's motion to strike this testimony out as irrelevant was overruled.

*Held:* That the admission of this evidence and the refusal of the court to strike it out was clearly erroneous.

4. PUBLIC OFFICERS—*Compensation Rests on Statutes and Ordinances—Quantum Meruit for Official Duties.*—That a public official must rely for his compensation upon the statutes and ordinances, duly enacted, which specify such compensation, and that he cannot recover on a *quantum meruit* for official duties performed is well settled.

5. MUNICIPAL CORPORATIONS—*Action by Town Against Former Treasurer—Delinquent Taxes—Burden of Proof—Case at Bar.*—In the instant case, an action by a town against a former treasurer for money collected by the treasurer and not accounted for, the burden is upon the town to show the amount of delinquent taxes collected by the treasurer's predecessor in office and turned over to defendant treasurer and the amount of uncollected tax tickets returned by the defendant treasurer to his successor in office. In the instant case the expert accountant, witness for the town, was unable to determine accurately either of these amounts. Therefore the town failed to show the liability of defendant on account of the delinquent taxes collected.

6. APPEAL AND ERROR—*Records—Captious Objections and Exceptions—Costs of Printing Records.*—The records on appeal are often needlessly voluminous because of the multiplicity of captious objections interposed and exceptions taken by counsel, resulting in excessive costs for printing the records. This is a bad and, to clients, expensive habit, which those members of the bar who so thoughtlessly indulge themselves should correct.

Error to a judgment of the Circuit Court of Tazewell county, in a proceeding by motion for a judgment for money. Judgment for plaintiff for amount less than it claimed to be actually due and to which it assigns error.

*Reversed and final judgment for plaintiff.*

The opinion states the case.

*K. C. Patty* and *Chapman, Peery & Buchanan*, for the plaintiff in error.

*Sexton & Roberts* and *R. O. Crockett*, for the defendant in error.

Prentis, P., delivered the opinion of the court.

W. B. Dunn having been elected treasurer of the town of Bluefield, Virginia, held the office for two years, his term beginning September 1, 1922, and ending August 31, 1924. This motion for judgment charges that he failed to pay over or account for all the funds collected by him, and there was a verdict and judgment against him in favor of the town for $700.00, of which the town is here complaining, upon the ground that the amount is inadequate and substantially less than the sum shown to be actually due.

There are eight assignments of error based upon twenty-three bills of exception. We shall not discuss these in detail.

It appears from the evidence that the town council had, on September 2, 1918, fixed the salary of its treasurer at $600.00 per year, and again, on September 10, 1920, an ordinance was adopted which provided for the salaries of the officials of the town, including the treasurer, whose salary was fixed at $50.00 per month. The recorder of the town testified (and there was no contradiction) that the treasurer, in addition to this salary, was entitled by ordinance to five per cent on collections of water rents, which aggregated over $400 per year, and to retain the five per cent penalty added to delinquent taxes. There is no controversy

here as to the five per cent on the water rents. The salary of $50.00 per month was regularly paid to the treasurer during his two-year term on warrants countersigned by him.

The defendant treasurer, in his bill of particulars, for the first time claimed as an offset to the funds shown to be in his hands unaccounted for ($1,828.23), that as the ordinance providing for the treasurer's salary was passed before his term began, and as no later ordinance had been passed fixing the salary of the treasurer, therefore he was not bound thereby. He claimed that in lieu of the salary of $50.00 per month he was entitled to "the commissions provided by the general law" for his services in collecting the current town taxes for 1922 and 1923, which commissions aggregated $2,378.55; and that he was also entitled to a commission of $93.75, one-fourth of one per cent of a bond issue $37,500.00, and that he had only received his $1,200.00 which had been paid to him as salary on account or in partial payment of these commissions.

The trial court adopted his view and instructed the jury thus: "The court instructs the jury that since it appears that the town council of plaintiff did not for the years commencing September 1, 1922, and ending August 31, 1924, during which the defendant was the elected treasurer of the said town, fix his salary by an ordinance or resolution under the provisions of the charter of the said town, then that the defendant was entitled to receive as compensation for his services as such treasurer the commissions provided by the general laws of the State applicable to towns, and that the defendant is not entitled to offset against the claim of the plaintiff any other items shown in the defendant's statement of grounds of defense, except the items therein relative to taxes and commissions on bond issue funds."

[1] The only support which is claimed for the contention that the treasurer's compensation was not limited by the ordinances fixing his salary and other compensation is in Code, section 2431.   The history of that statute and its language clearly shows that it is inapplicable.   In 1915 (Acts 1915 [Ex. Ses.] chapter 85), when the first segregation act was passed, there was incorporated therein a section reading:

"2-b.   On the real estate, personal property, public service corporations, or other taxes heretofore received by the State but hereafter to be collected for local purposes, the treasurers of cities, counties and towns shall be paid by the cities, counties and towns the same commissions as now allowed by law for the collection of State revenue."

This is construed in *City of Richmond* v. *Pace*, 127 Va. 274, 103 S. E. 647.   The compensation of city and county treasurers, who had before the partial segregation act of 1915 (Acts 1915, page 119) received a large part of their remuneration from the State in commissions on State taxes theretofore collected by them was greatly diminished by the reduction in the State rate of taxation.   Being thus deprived of a substantial part of their compensation theretofore received by them from the State, the purpose of the statute was to maintain the rate of compensation of those treasurers whose remuneration had been so reduced.   The act had no reference whatever to treasurers whose total compensation had not been so reduced as a consequence of the segregation act.

By the act of 1920 (Acts 1920, page 351), the same purpose was indicated and effectuated.   The pertinent clause reads:  "Nothing in this section shall prevent councils of cities from fixing the amount of compensation of treasurers of said cities in cases in which said

councils are empowered by law to fix amount of compensation of treasurers of said cities.

"On the real estate, personal property, public service corporations, and other taxes received by the State, prior to the segregation of taxes under an act approved February sixteenth, nineteen hundred and fifteen, entitled an act to segregate for the purposes of taxation, pursuant to section one hundred and sixty-nine of the Constitution of Virginia, the several kinds and classes of property so as to specify and determine upon what subjects State taxes and upon what subjects local taxes may be levied, and to provide for the continuance for the year nineteen hundred and fifteen of the present State school tax of ten cents on every one hundred dollars of the assessed value of real estate and tangible personal property, as further amended by an act approved March fifteenth, nineteen hundred and fifteen, and as further amended by an act approved March twenty-second, nineteen hundred and sixteen, but thereafter collectible for local purposes, the treasurers of cities, counties and towns shall be paid for the tax year of nineteen hundred and twenty, and for each year thereafter, the same commissions as allowed by law for collection of the State revenue at the time of the approval of the act of February sixteenth, nineteen hundred and fifteen; provided, where there is a collector of taxes in any city of over fifty thousand inhabitants the said commissions shall not be paid by the treasurer of such city on taxes collected by the city collector."

In 1922 (Acts 1922, chapter 436) this statute was reenacted and is part of Code, section 2431, prescribing the compensation of county and city treasurers, but the period appearing at the end of the first paragraph in the portion of the 1920 act which is quoted was omitted

and a comma substituted therefor.    It is apparent that
this failure to paragraph and change in punctuation
was inadvertent, because there being no change in the
lilnguage it makes the involved and resulting sentence
alogical if not meaningless.    It is clear that there was
no intention to increase or affect the compensation of
any treasurer who had not been charged with the duty
of collecting taxes for the State prior to the 1915
segregation act.    This is manifested in the 1915 act
by the words "heretofore received," referring directly
to State  taxes, and in the later acts by the words
"received by the State prior to the segregation of
taxes" under the 1915 act.    *Richmond* v. *Pace, supra.*

[2]  Now, the treasurer of Bluefield suffered no diminu-
tion of compensation in consequence of the segregation
acts.    Neither before nor since their enactment did he
ever collect any State taxes or receive any commission
therefor, and hence the statutes relied on do not relate
to his compensation.    This is fixed solely by ordinance
of the town.    The instruction, therefore, directing the
jury otherwise, is palpably erroneous, and necessitates
a reversal of the judgment.

The defendant treasurer, admitting that he held a
balance of $1,828.23, sought to absorb it not only by
claiming 'commissions under Code, section 2431, as
compensation, and five per cent additional on delin-
quent taxes collected, but also claimed for office rent,
etc., for services as accountant, for assessing water
rents, for commissions on bond issue, and many other
services, aggregating over $6,000.00, afterwards reduced
$1200.00, which he sought to set off against the claim
of the town, and to recover the resulting balance
asserted to be in his favor.

[3]  Many of the services for which such compensa-
tion was so claimed were incidental to his office, all were

voluntary and unsupported by either contract or ordinance. The court permitted the introduction of a mass of testimony by many witnesses, including the defendant, over the repeated objections of the plaintiff, to the effect that these services were reasonably worth the amounts charged by the treasurer therefor. Then, when at the conclusion of the testimony the plaintiff moved to strike it out as irrelevant and immaterial, the motion was overruled. That such evidence should not have been admitted is clear; that having been erroneously admitted, it should have been stricken out is obvious. This, indeed, the trial court concluded as to all of the items except the commissions, because in the instruction given, which has already been quoted, the jury were told that "the defendant is not entitled to offset against the plaintiff's claim any other items shown in the defendant's statement of the grounds of defense, except the items relative to taxes and commissions on bond issue funds."

What effect the frequently repeated erroneous rulings and the admission of all this erroneous testimony from so many witnesses had upon the jury it is impossible to say.

[4] That a public official must rely for his compensation upon the statutes and ordinances, duly enacted, which specify such compensation, and that he cannot recover on a *quantum meruit* for official duties performed is too well settled to require discussion. *Delaplane* v. *Crenshaw*, 15 Gratt. (56 Va.) 468; *Norfolk* v. *Pollard*, 94 Va. 279, 26 S. E. 832; *Johnson* v. *Black*, 103 Va. 477, 49 S. E. 633, 68 L. R. A. 264, 106 Am. St. Rep. 890; 1 Dillon Mun. Corp., section 233; 19 R. C. L. sections 219, 220, page 920.

It follows from what we have said that we think under no proper view of the facts so clearly shown could

the verdict have been for less than the amount of the admitted balance in the hands of the treasurer, $1,-828.23.

[5] The town claimed a very much larger sum, but after the expert accountant had testified and the facts had been fully developed, reduced its claim to $2,-581.42.   The difference arises out of conflicting contentions as to the amount of delinquent taxes accruing prior to 1922, when the term of this treasurer began. As to this, the burden was on the plaintiff town, and so the trial court properly instructed the jury.   This burden the town has failed to carry.   The expert accountant witness was unable to determine accurately either the amount of such delinquent tax tickets received from the former treasurer for collection or the precise amount of such uncollected tax tickets returned by the defendant treasurer to his successor in office. This may have been caused by the refusal of the defendant to surrender certain books which he claimed were private memoranda, the substance of which he also claimed he had already supplied.   This, however, does not supply for the town the proof which by the admission of the expert was so clearly lacking.

On the other hand, the defendant testifies positively that all of these past due taxes which were collected by him, which accrued in the years previous to his term of office, were accounted for and paid over.   He specifies the amounts paid, less five per cent commission retained, $173.96 for 1920 and $1,416.48 for 1921 taxes, and that he returned $1,031.00 uncollected tickets for those years.

Perhaps the obscurity, lack of proof, or difference of view, grows out of the fact that the defendant had assumed the duties of the previous treasurer November 1, 1921, while his own term did not begin until Septem-

ber 1, 1922, and there never was any final settlement of the accounts of the former treasurer.

The plaintiff, then, has failed to show any additional liability of the defendant on account of delinquent taxes collected for years prior to 1922.

We think it unnecessary to pursue the discussion further.

[6] There is another matter which we think calls for notice. There is some general complaint of excessive costs in this court. These costs grow chiefly out of the expense of printing the records, which so often are needlessly voluminous only because of the multiplicity of captious objections interposed and exceptions taken by counsel. Frequently these are made and exceptions saved only to be forgotten until they appear in the completed record, to be reflected in the amount of the printer's bill. This record, which discloses only a few pertinent facts, well illustrates this bad, this inexcusable, expensive and time-consuming habit. For example, when the expert witness for the town was reciting the instructions which he received from the mayor when he was employed, to the effect that "a fair statement of the financial condition of the town" was desired, and that he was instructed to go ahead and make a complete and fair audit, he was interrupted by a motion to strike out the question as to these instructions and his answer thereto. Upon an adverse ruling, exception thereto was duly saved. The groun of this exception were not stated, and we suppose there are none. Certainly we can think of no more proper question or more responsive answer. This is but an instance of the superfluous, irrelevant and redundant matter of which we find so much in this and other records. It illustrates the bad, and to clients expen-

sive habit, which those members of the bar who so thoughtlessly indulge themselves, should correct.

Our conclusions are to set aside the verdict and judgment for $700.00; and the facts before us being sufficient, in our opinion, to enable us to "attain the ends of justice," we will enter final judgment here in favor of the town for the balance shown to be due by the defendant, $1,828.23, with interest thereon from September 1, 1924, and costs.

*Reversed and final judgment for plaintiff.*