CITY OF MILES CITY, RESPONDENT, *v.* STATE BOARD OF HEALTH, APPELLANT.

(No. 2,705.)

(Submitted June 28, 1909.  Decided July 3, 1909.)

[102 Pac. 696.]

*Cities and Towns—Public Health—Water Supply—Discharge of Sewage into Streams—State Board of Health—Validity of Order—Appeal to District Court—Burden of Proof.*

Cities and Towns—Discharge of Sewage—State Board of Health—Regularity of Procedure.
1.  The fact that the state board of health did not hear testimony before it made an order prohibiting a city from polluting a stream which is a source of water supply for domestic uses, is not a valid objection to the order.  Section 1566, Revised Codes, under which the board acted, does not provide for a public trial, but contemplates an *ex parte* investigation by the board.

Same—Pollution of Streams—Statutes.
2.  The validity of the order of the state board of health above referred to was not affected by the fact that the intake of the water

supply of the next town on the river below the outfall of defendant city's sewer was many miles away. The prohibition of the statute (Chapter 177, Laws 1907 [Revised Codes, secs. 1559-1572]) is against the pollution of a stream at any place within the state.

Same—Public Health—Prescription—Police Power.

3.  Prescription does not run against the right of the state to protect the public health by preventing the pollution of a stream which is a water supply for domestic uses; nor may the state waive or devest itself of its police power in this respect.

Same—Appeal from Order of Board—Burden of Proof.

4.  A city against which the state board of health had issued an order prohibiting it from emptying its sewage into a river before proper purification, had the burden of showing, on appeal to the district court, that the order was not justified; hence, where it produced no evidence whatever, and the order, upon its face, bore no evidence of its own invalidity, the order will be held valid.

*Appeal from District Court, Custer County; C. H. Loud, Judge.*

ACTION by the City of Miles City against the State Board of Health of Montana to annul an order issued by the board prohibiting plaintiff city from emptying sewage into Yellowstone river. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

*Mr. Albert J. Galen,* Attorney General, *Mr. E. M. Hall,* and *Mr. W. L. Murphy,* Assistant Attorneys General, for Appellant.

Both state and local boards of health have been sustained in making orders affecting property rights of corporations or individuals without a hearing, especially so where a right of appeal is given. In the leading case of the *City of Taunton* v. *Taylor,* 116 Mass. 254, this principle is elucidated and confirmed. Another Massachusetts case, *Salem* v. *Eastern Ry. Co.,* reported in 98 Mass. 431, 96 Am. Dec. 650, takes the same view. The footnote to this case contains numerous citations to other cases which are in accord with the two referred to. The sanitary condition of local communities being largely dependent upon the character of the public water supply, the most stringent statutes, as well as rules and regulations, may be enacted and enforced. (See *Gloucester-Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, 5 Sup. Ct. 826, 29 L. Ed. 158; Parker & Worthington on Public Health and Safety, sec. 298; *State* v. *Wheeler,*

44 N. J. L. 88; *City of Durham* v. *Eno Cotton Mills*, 141 N.
C. 615, 54 S. E. 453, 7 L. R. A., n. s., 321.)

The legislature cannot devest itself of its police power, and
all persons and corporations hold their property subject to
such police power.   (8 Cyc. 856, 866; *Boston Beer Co.* v. *Massa-
chusetts*, 97 U. S. 25, 24 L. Ed. 989.)

Respondent contends, also, that the legislature has no power
to pass an act prohibiting the dumping of sewage into the
Yellowstone river.   It is within the police power of the legis-
lature to provide for water supplies and to protect the same
from pollution.   (8 Cyc. 869; see exhaustive opinion of Mr.
Justice Peckham in *New York City Health Department* v. *Trin-
ity Church*, 145 N. Y. 32, 45 Am. St. Rep. 579, 39 N E. 833,
27 L. R. A. 710.)   For additional authorities dealing with the
question of the police power of the state in relation to questions
of public health, see Freund on Police Power, secs. 140-155;
also 2 Current Law, 173; 3 Current Law, 1599; 5 Current Law,
1641; 8 Current Law, 36.)

*Mr. George W. Farr,* and *Mr. C. R. Tisor,* for Respondent.

The authorities are uniform in their holding that a prescrip-
tive right to pollute the waters of a stream may be created by
an uninterrupted adverse user thereof for the statutory period.
(*Masonic Temple Assn.* v. *Harris*, 79 Me. 250, 9 Atl. 737.)   "A
prescriptive right to pollute a stream is available if such right
has been acquired by adverse user, though such use might have
been originally a nuisance."   (*Warren* v. *Hunter*, 1 Phila. 414;
*Lockwood Co.* v. *Lawrence*, 77 Me. 297, 52 Am. Rep. 763.)

Chapter 177 not only prohibits a future use of the streams for
the purposes therein mentioned, but has also a retrospective ac-
tion, in that it imposes liabilities upon the city of Miles City
which did not exist at the time of the passage thereof, and dis-
turbs and affects the established and vested rights of the said
city; and for these reasons sections 6 and 8 are unconstitutional.
(*The Society for Propagation of Gospel* v. *Wheeler*, Fed. Cas.
No. 13,156, 2 Gall. 105; *People ex rel. Thorne* v. *City of San
Francisco*, 4 Cal. 127; *Bond* v. *Munso*, 28 Ga. 597; *Dash* v. *Van

*Kleeck,* 7 Johns. 477, 5 Am. Dec. 291.) "A municipal cor-
poration may, without incurring responsibility, permit sewers
and drains to be emptied into a natural watercourse if the flow-
age thereof is not unreasonably increased." (*Flynn* v. *Shenan-
doah,* 19 Pa. Co. Ct. 622; see, also, *Munn* v. *Mayor etc. of Pitts-
burg,* 40 Pa. 364; *Newark Aqueduct Board* v. *Passaic,* 45 N. J.
Eq. 393, 18 Atl. 106; *Church* v. *People,* 179 Ill. 205, 53 N. E.
554; *Joplin Consolidated Min. Co.* v. *City of Joplin,* 124 Mo.
129, 27 S. W. 406.)   In *Platt Brothers & Co.* v. *Waterbury,* 72
Conn. 531, 77 Am. St. Rep. 335, 45 Atl. 154, 48 L. R. A. 694,
it is said: "The accepted rule of safe tolerance is one part of
sewage to twenty parts of pure river water." Some authorities
go so far as to say a city has a right to empty its sewage into
a natural stream to an extent that will cause a pollution of the
waters, rendering them unfit for use and causing damage to
lower proprietors, and such damaged parties are not even en-
titled to compensation; that the city is exercising its govern-
mental function conferred by constitution, and that the health
and benefit to the public at large is to be considered in pref-
erence to the rights of individuals.   (See *City of Valparaiso* v.
*Hagen,* 153 Ind. 337, 74 Am. St. Rep. 305, 54 N. E. 1062, 48
L. R. A. 707.)

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

In 1897 the city of Miles City installed a sewer system for
the purpose of carrying off the sewage of the city.   The out-
let of the main sewer was then, and ever since has been, in a
slough, which is in fact an arm or branch of the Yellowstone
river.   At the time of the installation of the sewer system, and
for a long time thereafter, water flowed through this slough
during most of the time in quantities sufficient to carry this
sewage from the outlet off into the main channel of the Yellow-
stone river; but during the last few years the head or intake
of this slough has become so far obstructed that only during
high-water seasons is there sufficient water flowing through the
slough to carry off the sewage, and for considerable periods of

time this sewage accumulates in the slough near the outlet of the sewer, and during such periods is a constant menace to the health of the inhabitants living near such outlet. To obviate the difficulty Miles City in 1908 prepared to extend the main sewer from its present outfall in the slough on some distance across an island, with the purpose of there discharging the sewage directly into the Yellowstone river, without having purified the sewage in any manner. Acting upon information furnished it, the state board of health called a meeting of the board to consider the matter, and notified the city, which was represented at such meeting by its attorney. At that meeting there does not appear to have been any testimony taken, but the board made an order which recites the calling of the meeting, the appearance of the city by its attorney, and then proceeds: ''And it appearing that said river is used as a source of water supply for domestic use by persons residing along said river below said Miles City, and within four days of the natural flowage of the waters of said river,   *   *   *   and the said board being fully advised in the premises, and having fully considered the matter, finds and determines that such discharge of said sewage into the Yellowstone river will produce such an unsanitary condition, and be such a pollution of the waters of said stream, as to be dangerous to public health, and believing that the same is contrary to law, wherefore, it is by the state board of health of the state of Montana here ordered that the extension of the outlet of the sewer system of Miles City, Montana, be, and the same is hereby, prohibited. And it is further ordered and directed that the said Miles City, at as early a date as practicable, dispose of the sewage of said city in some sanitary manner, acceptable to the said state board of health.'' From that order of the board the city appealed to the district court. In perfecting its appeal the city, through its attorney, prepared a statement of facts, and added thereto the grounds upon which the city objected to the order. This statement has since been treated substantially as an agreed statement of facts. In the district court there was not any evidence produced, but counsel for the respective parties stipulated that the slough into

which the present sewer system discharges is a branch or part of the Yellowstone river, and that the only effect of the proposed change would be to alter the point of discharge of the sewer system. Upon this stipulation having been made, the district court entered judgment annulling the order of the board of health, and from that judgment the board has appealed to this court. Since the decision of the district court does not indicate the ground of the court's ruling, the specifications contained in the city's statement on appeal to the district court are presented here; and, while they are six in number, they really present but two principal contentions.

1. It is said that the state board did not hear testimony to determine whether the sewage discharged into the Yellowstone river would pollute the waters of the river. Assuming this to be true, it is not a valid objection to the order made by the board. Section 8, Chapter 177, p. 477, Laws 1907 (section 1566, Revised Codes), authorizes the board to make, or cause to be made, a thorough investigation in a case of this character; and, if in the judgment of the board the public health so requires, the board may make such an order as the one now under review. This section does not contemplate a public trial, but rather an *ex parte* investigation, and the legislature, being the repository of the police power of the state, could designate the state board of health as its agent, and prescribe the manner in which such police power should be exercised. As a precaution, however, against any injustice, section 10 of the Act (section 1568, Revised Codes) provides that any party aggrieved by the order may appeal to the district court. If the board, then, informed itself by any means, the fact that testimony was not taken is altogether immaterial. The order recites that the board was fully advised in the premises, and found that the sewage discharged into the river would pollute the water to such an extent as to produce an unsanitary condition—one dangerous to the public health.

Counsel for the city misapprehend the scope of this statute. The prohibition is against the pollution of the waters of a stream which is the source of water supply. Assuming for the pur-

poses of this appeal, as counsel did upon the oral argument, that the reference in the order of the board is to the city of Glendive particularly, and assuming, further, that the intake of the Glendive water supply is many miles below the outfall of the Miles City sewer, the order of the board, on its face, is still justified; for the prohibition is not directed against polluting the waters of a river at such intake alone, but applies equally against polluting them at such outfall. The prohibition is against polluting the waters at any place within the state, and it is therefore wholly immaterial that the putrescible constituents of the sewage are not carried to the intake of the Glendive water supply, if such be the fact. The state, in the valid exercise of its police power, has said by this statute that hereafter no polluting sewage and no human excrement shall be discharged into any stream which is the source of water supply for a city or town, until such deleterious matter is rendered harmless by some means of sewage purification acceptable to the state board of health. In *City of Durham* v. *Eno Cotton Mills,* 141 N. C. 615, 54 S. E. 453, 7 L. R. A., n. s., 321, the court had under consideration a similar statute, and reached the same conclusion which we have indicated above. In this case there is also considered at great length the general subject of police regulations, sustaining the views hereinafter set forth.

2. It is further contended that the city of Miles City has acquired by prescription the right to discharge its sewage into the Yellowstone river. The seriousness with which counsel for the city have urged this impels us to give it attention. The cases cited in their brief, however, do not sustain them. Those cases refer to rights acquired as against private individuals; but when the city asserts that it has acquired such prescriptive right as against the state, and that it is a right of such character as that against it the police power of the state cannot be invoked, it assumes an altogether unique position. In the first place, a city is but one of the governmental agencies of the state, and as such agent it could not acquire the right by prescription; for the elements of adverseness, exclusiveness, and claim of right are absent during the entire period of the

city's use of the river, and those elements are essential to the establishment of a right by prescription. (*Talbott* v. *Butte City Water Co.,* 29 Mont. 17, 73 Pac. 1111.) Furthermore, the right which the state is attempting to assert through the agency of the state board of health is a public right—a right to protect the health of the people of the state—and as against such public right prescription does not run. (*Commonwealth* v. *Moorehead,* 118 Pa. 344, 4 Am. St. Rep. 599, 12 Atl. 424; 22 Am. & Eng. Ency. of Law, 2d ed., 1190.) There is yet another reason why the city cannot acquire such a right by prescription as that against it the state may not invoke its police power. It is now generally conceded that the police power is such a power, inherent in the state for the protection of the public, that the state may not waive or devest itself of the power to exercise it. (*In re O'Brien,* 29 Mont. 530, 75 Pac. 196; 8 Current Law, 36; *Portland* v. *Cook,* 48 Or. 550, 87 Pac. 772, 9 L. R. A., n. s., 733; 1 Abbott on Municipal Corporations, 209.) It would seem to follow, then, as a matter of course, that notwithstanding the length of time the city has enjoyed the privilege of discharging its sewage into the river, the state may, in the interest of the public health and safety, regulate such use, or, if necessary, prevent the continuance of it. Indeed, if the state had consented to the use of the Yellowstone river by Miles City for the purpose of discharging its sewage therein, such consent would not have amounted to more than a license, which the state might revoke whenever public interests require it. (*Portland* v. *Cook,* above.)

But if it was possible for the city to have acquired the right which it asserts, that fact of itself would not preclude the state from enforcing any reasonable police regulations, even though such regulations called for an abandonment of the right asserted in the manner asserted; for all property is held subject to the right of the state to so regulate and control its use as to secure the general safety and public welfare. (*City of Helena* v. *Kent,* 32 Mont. 279, 80 Pac. 258; Cooley's Constitutional Limitations, p. 830.) And in the proper exercise of this police power one may even be restrained from doing a thing in itself lawful and

right (*City of Butte* v. *Paltrovich,* 30 Mont. 18, 104 Am. St. Rep. 698, 75 Pac. 521), or may have his property destroyed, even though he himself is not at fault (Cooley's Constitutional Limitations, p. 878).   In fact the reason for the exercise of this power finds expression in the two maxims, *"Sic utere tuo al alienum non laedas,"* and *"Salus populi suprema lex."*

The statute does not deprive Miles City of any property right.   It does not forbid the city using the Yellowstone river for the purpose of discharging its sewage, provided the sewage has been subjected to some practical means of purification.   The statute looks only to a proper regulation of the use asserted, and not to a denial of the use; and the mere fact that the city was making use of the river for discharging raw sewage into it at the time this statute was enacted, which modifies such use, is not any valid objection to the statute.   (Cooley's Constitutional Limitations, 7th ed., Chap. 16; *Health Department* v. *Rector,* 145 N. Y. 32, 45 Am. St. Rep. 579, 39 N. E. 833, 27 L. R. A. 710.).

3. Upon oral argument it was suggested that the state board attempted to proceed under Chapter 110, page 265, Laws 1907 (sections 1474-1511, Revised Codes), but there is not anything before us to bear out the suggestion.   Chapter 110 is the general law creating the state board of health, and defining its powers and duties.   The suggestion made is not warranted, for the statement on appeal, prepared by the city attorney, alleges that the board was proceeding under Chapter 177, which is an Act to prevent the pollution of public water supplies.

4. Finally, it is suggested that, since the state board did not produce any evidence before the district court in support of its order, the judgment of the district court must be sustained.   It appears that the cause was not set down for trial, or, at least, it was not deemed necessary to take any evidence.   Just what view the trial court entertained as to the burden of proof, if that question was suggested, we are not able to know; but, since the statute is couched in prohibitive terms, and, in addition thereto, provides that pending the appeal to the district court the order of the board shall continue in force, unless otherwise

ordered by the board, the conclusion would seem irresistible that the city in this instance had the burden of showing that the order was not justified. This it might have done by showing (a) that the sewage does not contain any human excrement, and that without such excrement it is not of such character and quantity as to pollute the waters of Yellowstone river; or (b) that the sewage had been rendered harmless by being subjected to some practical method of sewage purification satisfactory to the state board of health, or which ought to have been satisfactory to such board. In the absence of a showing of either of these facts the court could not annul the order, unless upon its face the order bore evidence of its own invalidity, which the one now under review does not.

The judgment is reversed, and the cause is remanded to the district court, with directions to proceed to a hearing with the cause in conformity with the views herein expressed.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.