OF

# WEST VIRGINIA·

---

## CHARLESTON.

BALTIMORE & OHIO R. R. Co. *v.* PUBLIC SERVICE COMMISSION.

Submitted January 11, 1922.    Decided January 17, 1922.

1. PUBLIC SERVICE·COMMISSIONS—*Party Participating in Inquiry Cannot Complain of Lack of Notice or Departure from Pleadings.*

    The Public Service Commission, in a proceeding before it within its jurisdiction, is not confined to the immediate scope of the pleadings. It may enlarge the scope of the inquiry; and where the party whose interests are affected was before the Commission, participated in the inquiry and made full defense, it can not complain of the lack of notice of the proceeding or of a departure from the pleadings, if the action of the Commission was within the scope of such inquiry. (p. 4).

2. RAILROADS—*Order for Switch Held Not Objectionable for want of Notice.*

    Where a private manufacturer made application by petition to the Public Service Commission, praying that the defendant Railroad Company be required to establish a siding or switch for the use of the applicant, and the defendant files its answer, and both applicant and defendant proceed before the Commission to take evidence as to the reasonable necessity of a public siding or switch at the point designated, and upon final hearing, the Commission orders defendant to furnish certain supplies and perform part of the work, as its proportion of the cost of constructing such siding, and upon completion thereof to operate such switch for the use of the

public generally, the defendant can not complain of want of notice or of opportunity to be heard. (p. 6).

3.  PUBLIC SERVICE COMMISSIONS—*Pleadings Based on Evidence will not be Disturbed by Supreme Court.*

    Findings of fact by the Public Service Commission, based upon evidence to support them, will not be disturbed upon appeal to this court. (p. 6).

4.  CONSTITUTIONAL LAW—RAILROADS—*Switch for Public Use Constructed at Expense of Railroad and Private Corporation Not a Private One.*

    Where the Public Service Commission requires a railroad company to contribute a portion of the cost of constructing a sidetrack or switch for the use of the public generally, in connection with its main track, the fact that the remainder of the cost is to be borne by a private corporation does not make the sidetrack a private one, nor is it a taking of the railroad company's property for private use, contrary to the 14th Amendment to the Constitution of the United State. (p. 7).

5.  SAME—EMINENT DOMAIN—*Compelling Railroad to Furnish Reasonably Adequate Public Facilities Held Not Taking of its Property Without Compensation.*

    An enforced discharge by a railroad company of its duty to provide reasonably adequate facilities for serving the public does not amount to a taking of property without compensation, contrary to the 14th Amendment of the Constitution of the United States or the Constitution of West Virginia, merely because it is attended with some expense. (p. 7).

The Sutton Chemical Company applied to the Public Service Commission for an order to compel the Baltimore & Ohio Railroad Company to construct a certain switch or siding, and the Commission issued the order applied for, and the Railroad Company filed its petition against the Commission for suspension of such order.   On motion to suspend order.

*Motion denied; Relief refused; Petition dismissed.*

*Conley & Johnson,* for petitioner.
*Dulin & Davis,* for respondent Sutton Chemical Co.

MEREDITH, JUDGE:

The Sutton Chemical Company, a manufacturer of hardwood chemicals and lumber, with its principal place of bus-

iness at Sutton, Braxton County, made application to the Public Service Commission to compel the Baltimore and Ohio Railroad Company to construct a switch or siding at Bear Creek on defendant's main line in said county, alleging that the applicant owns a large amount of chemical wood at that point, which it was unable to ship to its plant, unless a railroad switch or siding should be placed at the mouth of Bear Creek connecting with defendant's railroad; that a large amount of this wood was ready for shipment and a large amount remained to be cut; that applicant had at least 100 car loads of chemical wood under contract, with one-half cut and ready for shipment, and that with a switch or siding at that point the amount could be increased to 600 or 700 car loads, and that without such switch or siding it is not possible to load said chemical wood on cars, and that applicant would be greatly damaged, in addition to the loss of a great amount of wood, and that the defendant refuses to permit the applicant to use its main track, that being the only track there for loading purposes, on reasonable terms, and that by placing said switch or siding the defendant would not only have the benefit of the shipment of wood and lumber to applicant's plant, but would also have the benefit of shipping the manufactured products of the wood over its road to their final destination.

The defendant filed an answer denying knowledge of applicant's material then ready for shipment or of the necessity for a siding, or of the advantage which might result to the applicant from the construction of such siding, and also denied that it had refused to grant applicant a siding-connection at Bear Creek or at any other point, and averred that it had advised applicant of its willingness to consider an application for a siding, and, if the physical conditions would permit, to arrange for the construction of a siding on terms similar to those under which the siding at Spread, West Virginia, was constructed, for the use of the applicant. It also denied that without such siding the applicant could not load its material on cars, and averred that it had published a tariff providing charges for loading or unloading on the main track, but to avoid accidents or delays to traffic it is necessary

to restrict such loading and to permit the same to be performed only on the authority of defendant's division superintendent. It further denied that it had violated any of the laws of the state relating to its business as a common carrier, and averred that the petition does not present a case recognizable by the Commission.

A full hearing was had before said Commission, evidence was taken on behalf of applicant and defendant, and on the 7th day of November, 1921, the Commission entered an order requiring the defendant forthwith to establish, construct and maintain at Bear Creek between Sutton and Gassaway, on the line of its railroad, a siding or spur track of the capacity of at least two cars connecting with said railroad, subject to the following terms and conditions:

"(1) The complainant shall, at its own expense, make such cuts and fills and do such other grading as may be necessary for the construction of said siding or spur track, and shall furnish to the defendant the switch ties and cross ties necessary for the construction thereof, all according to plans and specifications therefor, to be furnished by the defend ant's engineer to the said complainant.

"(2) When said grade is completed and ties furnished, the defendant shall furnish all necessary frogs, switches and rails, and lay and connect the same to its main line at said point.

"(3) When said siding shall have been completed, it shall be. used and operated by the said defendant as a commercial siding for the use of the public generally until the further order of the Commission.

"(4) In case any dispute shall arise between the complainant and the defendant, as to the location of said siding, or as to the character of the grading, or materials necessary therefor, or as to any other matter or thing pertaining thereto, such dispute shall be submitted to this Commission for its determination and settlement."

The defendant presented its petition to this court, praying for a suspension of said order. In challenging the order, defendant relies upon two main grounds:

First, that applicant's petition is for a private or industrial siding, while the siding ordered by the Commission is

to be used and operated by the defendant as a commercial siding for the use of the public generally, the defendant complaining that there was no issue before the Commission as to the necessity of a commercial or public siding, and that consequently it had no notice that the Commission would pass upon the need of a public siding.

In replying to this objection, the record shows that the defendant appeared by counsel, cross-examined the applicant's witnesses, and adduced testimony in its own behalf as to the public necessity of a siding at this point; practically all of the testimony adduced both for the applicant and the defendant is upon this phase of the case; so that the defendant can hardly say that it had no actual notice of the real issue before the Commission; but the statute, section 2, chapter 15-0 of the Code, provides that: "In the investigation, preparation and hearing of cases, the Commission may not be bound by the strict technical rules of pleading and evidence but in that behalf it may exercise such discretion as will facilitate their efforts to understand and learn all the facts bearing upon the right and justice of the matters before them." In view of the liberal provisions of the statute providing for informal pleadings and the great liberality in the evidence which may be heard by the Commission, the Court is of the opinion that the point is not well taken, and that the Commission had the right under the circumstances of the case, and especially so, in view of the fact that the defendant was present by counsel during the taking of the testimony and introduced evidence in its own behalf upon the issue raised, to direct the defendant to aid in the installation of this public siding.

The Commission has the right, not only to hear complaints brought before it by interested parties, but may initiate inquiries on its own motion; it is not confined in proceedings before it to the immediate scope of the pleadings which may be filed. It may enlarge the scope of the inquiry, and where parties to be affected are before it, and participate in such inquiry and make full defense, they can not complain of a departure from the pleadings. This view is sustained by the Supreme Court of the United States in the case of *C. H. &*

*D. Ry. Co.* v. *I. C. C.*, 206 U. S. 142, 27 Sup. Ct. Rep. 648. It was there held that: ''The Interstate Commerce Commission, in making an investigation of a complaint filed by soap manufacturers as to the freight rate for common soap promulgated in a classification adopted to govern in official classification territory, had the power, in the public interest, unembarrassed by any supposed admissions contained in the complaint, to consider the whole subject, and the operation of the classification in the entire territory, and also how far its going into effect would be just and reasonable, would create preferences, or would engender discrimination.''

Second,   The defendant complains that said order is arbitrary, unjust and unfair to the defendant, violates its legal rights, establishes an unlawful preference between commercial shippers upon its line, and is beyond the power of the Commission, and the order requires the defendant to expend a large sum of money without any hope of return thereon, effecting a confiscation of the defendant's property, and taking its property without due process of law, in direct contravention of the Constitutions of the United States and of the State of West Virginia.

If in fact the Commission is justified in establishing or requiring the defendant to establish a commercial or public siding at the point named, then in no sense can its action be adjudged arbitrary, unjust or unfair to the defendant, nor does it violate the defendant's legal rights, nor establish an unlawful preference between commercial shippers upon its lines, nor is it beyond the power of the Commission, because the statute expressly gives to the Commission, under section 4, the right to require every person, firm or corporation, engaged in public service business in this state, to establish and maintain such adequate and suitable facilities and conveniences as may be reasonable and just.   Was the Commission justified in requiring the defendant to contribute in part to the installation of a public or commercial siding at the point designated?   The record shows that some time prior to the filing of the petition of the applicant, the defendant, at the request of parties living at or near the mouth of Bear Creek, and also upon the request of one of the members of said Com-

mission, established at this point a flag station for passengers and a prepay station for less than car load shipments of freight, which is very persuasive evidence that there is some business of importance there. The record also substantially shows that there are 34 families who are or could be served by the railroad siding at that point; that there are between 3000 and 5000 cords of chemical wood, partly cut and partly uncut, and about 1,000,000 feet of saw timber in the near vicinity of this station, owned by divers parties, which could be conveniently shipped to market by way of said siding, and at little expense to the owners, and that to ship from any other railroad station would necessitate long and expensive hauls; that a great number of the 34 families living in that neighborhood, as well as a public school house, use coal for fuel when it can be had, and that a public siding at that point would save great expense in securing supplies of coal, and be a public convenience in securing fertilizers and other materials; so there being evidence to support the findings of fact by the Commission, its findings will not be reviewed by this Court. See *Norfolk & Western R. R. Co.* v. *Pub. Serv. Com.*, 82 W. Va. 408, 96 S. E. 62; *Mill Creek Coal & Coke Co.* v. *Pub. Serv. Com.*, 84 W. Va. 662, 100 S. E. 557; *City of Charleston* v. *Pub. Serv. Com.*, 86 W. Va. 536, 103 S. E. 673.

Nor can we concede that the effect of the order requires the defendant to expend a large sum of money without any hope of return, for the benefit of a private shipper, thereby depriving the defendant of its property without due process of law. The mere fact that a portion of the expense of constructing the proposed sidetrack is to be paid by the Sutton Chemical Company does not make the siding a private siding, and the record shows that the required expenditure is very slight and that the probable return will be ample to justify such expenditure. The track when built will become the property of the railroad company and be devoted to a public and not a private use. It was held in the case of *Chicago & Northwestern Ry Co.* v. *Ochs*, 249 U. S. 416, 39 Sup. Ct. Rep. 343, 63 L. Ed. 679, P. U. R. 1919-D, 498, that the empowering of a state commission to apportion between a plant

owner and a railroad company the cost of the rearrangement and extension of a sidetrack leading to an adjacent manufacturing plant, made necessary by the growth of such plant and its increasing shipments, does not take private property for private use, contrary to the 14th Amendment to the Constitution of the United States, where under the local law such a sidetrack is not merely a private siding but is additional trackage for public use, constituting an integral part of the railroad system, and that an enforced discharge by a common carrier of its duty to provide adequate facilities for serving the public does not amount to a taking of property without compensation, contrary to the 14th Amendment, merely because it is attended with some expense. We are, therefore, of opinion that by the order complained of the defendant is not deprived of any part of its property without due process of law, and contrary to the Constitution of the United States or of this state, and that the motion of the defendant to suspend said order should be denied.

*Motion denied; Relief refused; Petition dismissed.*