THE CITY OF HUNTINGTON

*v.*

STATE WATER COMMISSION

(No. 10476)

Submitted September 16, 1952. Decided January 14, 1953.

*H. L. Ducker, Paul W. McCreight,* for plaintiff in error.

*John G. Fox,* Attorney General, and *Thomas J. Gillooly,* Assistant Attorney General, for defendant in error.

HAYMOND, PRESIDENT:

This is a proceeding instituted in the Circuit Court of Cabell County, West Virginia, on September 13, 1949, by the petitioner, the City of Huntington, a municipal cor-

poration, against the State Water Commission of West Virginia herein sometimes designated as "Commission" for review of a final order entered by the Commission on August 17, 1949, which required the City of Huntington to cease and desist from polluting the Guyandotte River and the Ohio River and to notify the Commission within thirty days from the date of the entry of the order that the city would fully comply with its provisions and install, use and operate a practical and reasonably available system or means which would reduce the pollution of those rivers to an acceptable minimum. Upon a hearing of the proceeding, instituted in the circuit court under Section 7, Article 11, Chapter 16 of the Code, 1931, as amended and reenacted by Chapter 6, Acts of the Legislature, 1933, Regular Session, that court, by order entered December 15, 1951, affirmed the order entered by the Commission on August 17, 1949, and dismissed the proceeding. To the final order of the circuit court this Court awarded this writ of error upon the application of the petitioner, the City of Huntington.

This is the second review by this Court relating to the order of the Commission. Upon the first review, which involved the constitutionality of Section 7 of the statute, as amended, this Court sustained the constitutionality of that section and remanded the proceeding to the circuit court with directions that it hear and determine all questions which had not then been determined by it involving the validity of the order of the Commission and the constitutionality of the statute by virtue of which the Commission entered the order of which the petitioner, the City of Huntington, complains. *City of Huntington* v. *State Water Commission*, 135 W. Va. 568, 64 S. E. 2d 225.

Upon the remand of the proceedings to the circuit court, that court, as directed by this Court, proceeded to hear and determine the undetermined questions involved. It held that the finding of the Commission that the waters of the Guyandotte River and the Ohio River were polluted by the discharge of untreated sewage into those streams from the City of Huntington was justified by the evidence; that

in making such finding the Commission did not act in an arbitrary manner or exceed its statutory powers; and that Article 11, Chapter 16 of the Code, 1931, as amended, and each of its sections, are constitutional and valid; and by final judgment entered December 15, 1951, affirmed the order of the Commission of August 17, 1949, and dismissed the proceeding.

In support of its contentions that the final order of the Commission is invalid and that Article 11, Chapter 16, Code, 1931, as amended, is unconstitutional, the petitioner, by its assignment of errors, seeks reversal of the order of the circuit court and annulment of the order of the Commission on these grounds: (1) The order of the Commission is arbitrary and in excess of its statutory powers; and (2) Article 11, Chapter 16, Code, 1931, as amended, is unconstitutional (a) in authorizing the Commission to require of the City of Huntington, a municipal corporation with limited powers, action and financial expenditures which it is without sufficient authority or means to undertake or perform, (b) in imposing penalties for violation of an order of the Commission, and (c) in rendering ineffective the discretion vested in the council of the City of Huntington under existing statutes.

The specifically challenged statutory provisions are Sections 11 and 13, Article 11, Chapter 16, Code, 1931, as amended by Chapter 130, Acts of the Legislature, 1937, Regular Session, and Section 14, Article 11, Chapter 16, Code, 1931, as amended, by Chapter 130, Acts of the Legislature, 1937, Regular Session, and Chapter 102, Acts of the Legislature, 1945, Regular Session.

Section 11 relating to compliance with the final order of the Commission and the methods of raising funds for that purpose by certain designated persons, including a municipality, provides in part that any municipal corporation upon which a final order of the Commission is served shall, within thirty days after receipt of such order, or after judgment affirming such order is entered, take steps to acquire or construct such plants, machinery or works, or

to repair, alter or extend existing plants, machinery or works, as may be necessary for the disposition or the treatment of the organic or inorganic matter which is causing, or contributing to, a polluted condition of any water or waters, or shall take such other steps as may be necessary to comply with the final order of the Commission; and that if the offender is a municipal corporation the cost necessary to comply with the order shall be paid out of funds on hand available for that purpose, or out of the general funds of the municipal corporation not otherwise appropriated, or if there are not sufficient funds on hand or unappropriated the necessary funds shall be raised by the issuance of bonds. The section further provides that if the estimated cost is such that the necessary bond issue would not raise the total outstanding bonded indebtedness of the municipality in excess of the constitutional limit upon such indebtedness, such bonds may be issued as a direct obligation of the municipality and retired by a general tax levy upon all property within the municipality listed and assessed for taxation; that if the amount of such bonds would raise the total outstanding bonded indebtedness of the municipality in excess of the constitutional limit, or if the municipality should determine not to issue direct obligation bonds, it shall issue revenue bonds and provide for their retirement in the same manner and subject to the same conditions provided for such bonds in Chapter 25, Acts of the Legislature, 1933, First Extraordinary Session; and that objections by the owners of real estate to such revenue bonds shall not apply to such issue or operate to justify or excuse failure by the municipality to comply with the order of the Commission.

Section 13 provides in part that it shall be the duty of each member of the governing body of a municipal corporation, against whom a final order of the Commission has been issued, to begin appropriate action or proceedings to comply with the order within thirty days from receipt of the order if no action has been commenced in the circuit court to set aside or vacate it, or, if such action has been brought, within thirty days from the date of the judgment

affirming the order; that failure of the governing body of a municipal corporation to provide for financing and construction of such works as may be necessary to carry out the order shall constitute failure to begin appropriate action or proceedings to comply with it; and that any mayor, or councilman, of such municipal corporation who fails or refuses to discharge any duty imposed by the statute or by final order of the Commission shall be deemed guilty of a misdemeanor and upon conviction fined not less than twenty five dollars nor more than one hundred dollars, to which may be added imprisonment in the county jail for a period not to exceed ninety days.

Section 14 provides in part that the Commission shall have authority, in its discretion, to extend the time fixed in any final order within which any offender is ordered to correct or abate a condition of pollution of water, when it shall appear that an effort in good faith is being made to comply with the order and that it shall be impossible for the offender to complete the project of work undertaken within the time prescribed; and that when it shall appear that due to wartime restrictions with respect to labor or material, compliance with the order is impossible or places undue burden upon the offender, the Commission shall stay the execution of its order until it satisfactorily appears that such restrictions no longer exist. The section also imposes a penalty of one hundred dollars per day upon any municipal corporation which shall fail or refuse to correct or abate such polluted condition in compliance with the order within the time fixed or additionally granted, and provides that the penalty, in addition to that imposed by Section 13, may be recovered in a civil suit brought in the name of the State of West Virginia.

In considering the foregoing provisions of Article 11, Chapter 16, Code, 1931, as amended, it should be kept in mind that Section 10 declares that the various provisions of the article shall be construed as separable and that if any such provision should be held to be unconstitutional the remaining provisions of the article shall not be affected by such holding; and that Section 15 provides that the

statute, being for the public health, safety and welfare, shall be liberally construed to effectuate its purposes.

The uncontradicted evidence introduced at the hearing held by the Commission, on August 15, 1949, clearly shows that the waters of the Guyandotte River and the Ohio River are polluted by untreated sewage from the City of Huntington which is discharged and flows into those streams; and the finding to that effect by the Commission is neither arbitrary nor in excess of its statutory powers. The finding of the Commission is expressly authorized by Section 6, Article 11, Chapter 16, Code, 1931, as amended by Chapter 6, Section 6, Acts of the Legislature, 1933, Regular Session, which provides, in part that: "After a full hearing the commission shall make its findings of facts, and if it find that any person is polluting any of the waters of the state, it shall make and enter an order directing such person to cease such pollution and such person shall have thirty days after notice of the entry of such final order to notify the commission that he will comply therewith or will install, use and operate some practical and reasonably available system or means which will reduce, control or eliminate or reduce to a harmless minimum such pollution, having regard for the rights and interests of all persons concerned, * * *."

The question of the force and the effect of an order of an administrative board or tribunal, and particularly the force and the effect of an order of the Public Service Commission of this State, has been frequently considered by this Court. In *Town of Harrisville v. Public Service Commission,* 103 W. Va. 526, 138 S. E. 99, this Court held, in the syllabus, that: "The findings of the Public Service Commission, based upon substantial evidence, will not be reviewed by this Court." In the opinion in that case, with respect to the findings of the Commission, this Court said:

"Its findings are presumed to be reasonable, lawful and correct, and will not be set aside by this Court if based upon substantial evidence. 'Findings of fact by the Public Service Commission, based upon evidence to support them,

generally will not be reviewed by this Court.' *United Fuel Gas Co.* v. *Public Service Commission,* 73 W. Va. 571, 80 S. E. 931; *Mill Creek Coal Co.* v. *Public Service Commission,* 84 W. Va. 662, 100 S. E. 557, 7 A. L. R. 108; *City of Charleston* v. *Public Service Commission,* 86 W. Va. 536, 103 S. E. 673; *City of Huntington* v. *Public Service Commission,* 89 W. Va. 703, 110 S. E. 192; *Baltimore and Ohio Railroad Co.* v. *Public Service Commission,* 90 W. Va. 1, 110 S. E. 475.

"Nor will such findings be disturbed on appeal unless the Commission has acted so arbitrarily and unjustly as to fix rates contrary to the evidence, or without evidence to support them. *Interstate Commerce Commission* v. *Union Pacific Railroad Co.,* 222 U. S. 541, 32 Sup. Ct. 108, 56 L. Ed. 308; *United Fuel Gas Co.* v. *Public Service Commission,* cited." See also *The Baltimore and Ohio Railroad Company* v. *Public Service Commission,* 99 W. Va. 670, 130 S. E. 131; *City of Huntington* v. *Public Service Commission,* 101 W. Va. 378, 133 S. E. 144.

Point 1 of the syllabus in *Pittsburgh and West Virginia Gas Company* v. *The Public Service Commission of West Virginia,* 101 W. Va. 63, 132 S. E. 497, is in this language: "An order of the Public Service Commission fixing rates to be charged by a public service utility, within the constitutional and legislative power of the Commission, will not be disturbed unless it appears that the finding of fact on which the order is based is contrary to evidence, or without evidence, or there has been a misapplication of legal principles; and where there is a substantial conflict of evidence on any question of fact, the probative value accorded by the Commission to such evidence will not be disturbed." As a general rule administrative findings of fact are conclusive upon a reviewing court, and not within the scope of its power to review, if such findings are supported by substantial evidence or are based upon conflicting evidence. 42 Am. Jur., Public Administrative Law, Section 211. See *Poccardi* v. *Public Service Commission,* 75 W. Va. 542, 84 S. E. 242, L. R. A. 1916A, 299; *Conovas* v.

*Ott,* 108 W. Va. 397, 151 S. E. 309. The State Water Commission, like the Public Service Commission, is an administrative board or tribunal and the holdings in the cases just cited, with respect to its findings of fact and the force and the effect of its orders, are applicable to that Commission.

The opinion in *City of Huntington* v. *State Water Commission,* 135 W. Va. 568, 64 S. E. 2d 225, referring to the finding of the Commission, employs this language: "If the finding of the commission is clearly wrong or against the preponderance of the evidence, the circuit court in the first instance must, as this Court does, for instance, in cases coming from the Public Service Commission, set aside the finding, but whether the finding is wrong or against the preponderance of the evidence, the circuit court in the first instance must apply itself to that judicial task, for this Court will not in the first instance on appeal or writ of error from a circuit court pass on nonjurisdictional questions, not passed upon by the circuit court." The finding of the Commission, now having been passed upon and approved by the circuit court, and not being clearly wrong or against the preponderance of the evidence, or arbitrary, will not be disturbed by this Court upon this review, unless, of course, the provisions of Article 11, Chapter 16, Code, 1931, as amended, and under which the order of the Commission was issued, are unconstitutional and for that reason void and of no force or effect. Determination of that controlling question requires consideration of the pertinent provisions of the statute from the standpoint of their constitutionality, and of the grounds on which the constitutionality of those provisions is challenged and assailed by the petitioner.

The legislation here under consideration is manifestly designed to preserve and protect the public health and falls directly within the police power of the State. The Legislature is the depositary of this power and may delegate it to boards and commissions. *State ex rel. Morris* v. *The West Virginia Racing Commission,* 133 W. Va. 179, 55 S. E. 2d 263; *Hayes* v. *The Town of Cedar Grove,* 126 W.

Va. 828, 30 S. E. 2d 726, 156 A. L. R. 702. The law is well settled that the police power of the State embraces regulations designed to promote the public convenience or the general welfare or prosperity and regulations which relate to public health, morals, and safety. *Mill Creek Coal and Coke Company* v. *Public Service Commission*, 84 W. Va. 662, 100 S. E. 557, 7 A. L. R. 1081; *City of Niles* v. *Stream Control Commission*, 296 Mich. 650, 296 N. W. 713; *Commonwealth* v. *Roberts*, 155 Mass. 281, 29 N. E. 522, 16 L. R. A. 400; *Sprague* v. *Dorr*, 185 Mass. 10, 69 N. E. 344; *Miles City* v. *Board of Health of State of Montana*, 39 Mont. 405, 102 P. 696, 25 L. R. A., N. S., 589; *City of Durham* v. *Eno Cotton Mills*, 141 N. C. 615, 54 S. E. 453, 7 L. R. A., N. S., 321; *Lake Shore and Michigan Southern Railway Company* v. *Ohio*, 173 U. S. 285, 19 S. Ct. 465, 43 L. Ed. 702; *Chicago, Burlington and Quincy Railway Company* v. *People of the State of Illinois ex rel. Drainage Commissioners*, 200 U. S. 561, 26 S. Ct. 341, 50 L. Ed. 596; *Bacon* v. *Walker*, 204 U. S. 311, 27 S. Ct. 289, 51 L. Ed. 499; *Chicago and Alton Railroad Company* v. *Tranbarger*, 238 U. S. 67, 35 S. Ct. 678, 59 L. Ed. 1204.

In discussing generally the source and the nature of the police power the text in 11 Am. Jur., Constitutional Law, Section 245, contains these paragraphs:

"The police power is an attribute of sovereignty and a necessary attribute of every civilized government. It is a general term used to express the particular right of a government which is inherent in every sovereignty. Consequently, it is inherent in the states of the American Union, possessed by every one of them as sovereign, and is not a grant derived from or under any written Constitution. In connection with this latter principle, the point of view has been expressed that the police power is a grant from the people to their governmental agents. It has also been affirmed, however, in discussing the source of the power, that the right of the legislature to exercise the police power is not only not referable to any single provision of the Constitution, but inheres in, and springs

from, the nature of our institutions; and so the limitations upon it are those which spring from the same source, as well as those expressly set out in the Constitution. It is very generally regarded not as a delegated, but a reserved, power.

"The police power is as old as the civilized governments which exercise it. The states existed before the Constitution of the United States, and they possessed the police power before the adoption of that organic document. Moreover, it has been held many times that the Constitution supposes the preexistence of the police power, and must be construed with reference to that fact.

"The breadth and extent of the police power, covering the exigencies confronting the community, its adaptability, durability, inalienability, and the number of public purposes included in its scope make it a principal pillar of government. It has been stated that the police power in effect sums up the whole power of government, and that all other powers are only incidental and ancillary to the execution of the police power; it is that full final power involved in the administration of law as the means to the attainment of practical justice. Moreover, it has been said that the very existence of government depends on it, as well as the security of the social order, the life and health of the citizen, the enjoyment of private and social life, and the beneficial use of property." See also *Miller* v. *Board of Public Works of City of Los Angeles*, 195 Cal. 477, 234 P. 381, 38 A. L. R. 1479, writ of error dismissed in 273 U. S. 781, 41 S. Ct. 460, 71 L. Ed. 889; *In re Guerra*, 94 Vt. 1, 110 A. 224, 10 A. L. R. 1560; *State ex rel. Webster* v. *Superior Court of King County*, 67 Wash. 37, 120 P. 861, L. R. A. 1915C, 287, Ann. Cas. 1913D, 78.

In *Hayes* v. *The Town of Cedar Grove*, 126 W. Va. 828, 30 S. E. 2d 726, 156 A. L. R. 702, this Court held, in point one of the syllabus, that under the police power of the State, the Legislature has power to provide for the protec-

tion of the safety, health, morals, and general welfare of the public. In the opinion in that case, this Court said:

"Under our system, this power is vested in the states, existed before the adoption of the Federal Constitution, still remains with the state, and may through legislative action be delegated by it to municipalities. 'The police power of a state is an attribute of sovereignty, co-extensive therewith, difficult of definition because it cannot be circumscribed by mere words, latent in its nature, yet, nevertheless, perennially existing as a vast reservoir of authority to be drawn on by the law-making branch of the government for the public good.' *Hinebaugh* v. *James,* 119 W. Va. 162, 192 S. E. 177. For further and recent discussions of the doctrine see *Nulter* v. *State Road Commission,* 119 W. Va. 312, 193 S. E. 549, 194 S. E. 270; *Prager* v. *Chapman & Son,* 122 W .Va. 428, 9 S. E. 2d 880. In *C. B. & Q. Ry. Co.* v. *Illinois,* 200 U. S. 561, 26 S. Ct. 341, 349, 50 L. Ed. 596, Justice Harlan said, 'We hold that the police power of a state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety.' So far as we know, the power of the State, under its police power, to provide for the health of its people, has never been questioned, but, on the contrary, has been stressed as one of the powers which may be given the broadest application; and it is common knowledge that this power has been increasingly exercised, in keeping with advances made in the sciences of medicine and sanitation, in recent years. In these circumstances, courts are reluctant to place limits on what may be done in the interest of the health of a community, so long as unreasonable methods are not employed, nor the natural and constitutional rights of citizens invaded.

"The police power of the State is vested in the legislative branch of our Government, and may be employed or delegated by it, subject only to the control of the courts, to the extent that they may properly act."

The Legislature has the right to exercise the police

power of the State and may create a governmental agency for the enforcement of that power. 11 Am. Jur., Constitutional Law, Section 278; *Mound City Land and Stock Company v. Miller*, 170 Mo. 240, 70 S. W. 721, 60 L. R. A. 190, 94 Am. St. Rep. 727. The right of the Legislature to enact such reasonable and wholesome laws as in its judgment will promote the public welfare includes the power to impose such reasonable restrictions on the right to secure individuals as the Legislature deems to be for the best interest for the community, even though such restrictions were unknown to the common law. *Carter v. Craig*, 77 N. H. 200, 90 A. 598, 52 L. R. A., N. S., 211, Ann. Cas. 1914D, 1179. Although it is established beyond question that every power of the State, including the police power, is limited by the inhibition of the Fourteenth Amendment to the Constitution of the United States, the general rule is firmly established that the provisions of the Fourteenth Amendment which prohibit any State from depriving any person of life, liberty, or property without due process of law do not operate as a limitation upon the police power of a State to enact and enforce such laws as will inure to the health, the morals, and the general welfare of the people. 11 Am. Jur., Constitutional Law, Sections 261 and 262; *Town of Meredith v. State Board of Health*, 94 N. H. 123, 48 A. 2d 489; *Mugler v. Kansas*, 123 U. S. 623, 8 S. Ct. 273, 31 L. Ed. 205. In *Haigh v. Bell*, 41 W. Va. 19, 23 S. E. 666, 31 L. R. A. 131, the constitutionality of a statute which made it unlawful for the owners of hogs to permit them to run at large, enacted under the police power, was assailed on the ground that it contravened the due process provisions of the Constitution of this State, Article III, Section 10, and of the Fourteenth Amendment to the Constitution of the United States. In rejecting this contention this Court said: "When this enactment is assailed on the ground that it deprives the owner of his property without due process of law, these constitutional guaranties, state and federal, must be considered in connection with the police power of the state; for it is settled beyond further judicial controversy that these inhibitions do not limit,

and were not designed to limit, the subjects upon which the police power of the state may be exerted. *Barbier* v. *Connelly,* 113 U. S. 27 (5 Sup. Ct. 641); *Railway Co.* v. *Beckwith,* 129 U. S. 29 (9 Sup. Ct. 207); *Mugler* v. *Kansas,* 123 U. S. 663 (8 Sup. Ct. 273)." In *Nulter* v. *State Road Commission of West Virginia,* 119 W. Va. 312, 193 S. E. 549, 194 S. E. 270; this Court held, in point 2 of the syllabus: "The police power of a state is the power of government inherent in every sovereignty to enact laws, within constitutional limits, to promote the general welfare of its citizens. The Fourteenth Amendment of the Federal Constitution does not impair the police power of a state."

A municipality is a political subdivision of the State and is a mere creature of the Legislature. It owes its existence to and derives all its power from the Legislature which possesses the power to create and to destroy it. In the absence of express constitutional reservations in its favor or express constitutional limitations upon the power of the Legislature to control it, a municipality can exercise only such powers as are directly conferred upon it by the Legislature. *Booten* v. *Pinson,* 77 W. Va. 412, 89 S. E. 985, L. R. A. 1917A, 1244; *Hornbrook* v. *Town of Elm Grove,* 40 W. Va. 543, 21 S. E. 851, 28 L. R. A. 416. A municipality has also been characterized as "a local and subordinate government, created by the sovereign authority of the State, primarily to regulate and administer the local and internal affairs of the city or town incorporated, in contradistinction to those matters which are common to and concern the people at large of the State." *City of Winchester* v. *Redmond,* 93 Va. 711, 25 S. E. 1001; *Wallace* v. *City of Richmond,* 94 Va. 204, 26 S. E. 586, 36 L. R. A. 554. "The Legislature is the supreme law-making power in this State, and it may enact any statute not prohibited by the State or Federal Constitution." *State of West Virginia* v. *Blevins,* 131 W. Va. 350, 48 S. E. 2d 174.

The pollution of the waters of the Guyandotte River and the Ohio River, which the Commission has found is caused by the sewage from the City of Huntington, relates

800

to and affects the health of the people of this State and is not confined or restricted to the health of the inhabitants of that municipality. In other words, the condition which here exists is statewide, not local. "Public health is a state affair rather than a municipal affair." 2 McQuillin, Municipal Corporations, Third Edition, Chapter 4, Section 4.99. The power to safeguard the public health is a part of the police power and is inherent in the state. *Davock v. Moore*, 105 Mich. 120, 63 N. W. 424, 28 L. R. A. 783; *State ex rel. La Prade v. Smith*, 43 Ariz. 131, 29 P. 2d 718, 92 A. L. R. 168. The creation of metropolitan park districts, to provide open space for exercise and recreation, relates to the improvement and the conservation of the public health in densely populated areas and is a valid exercise of the police power of the state. *In re Opinion of the Justices*, 34 R. I. 191, 83 A. 3. In all matters which are not purely local the power of the state is supreme. 2 McQuillin, Municipal Corporations, Third Edition, Chapter 4, Section 4.84; *State ex rel. Daly v. City of Toledo*, 142 Ohio St. 123, 50 N. E. 2d 338. In *Brackman's, Incorporated v. City of Huntington*, 126 W. Va. 21, 21 S. E. 2d 71, with reference to municipal charters, ordinances and resolutions, this Court said: "Attached to every statute, every charter, every ordinance or resolution affecting, or adopted by, a municipality, is the implied condition that the same must yield to the predominant power of the State, when that power has been exercised." "A statute involving state affairs controls conflicting provisions in a city charter without regard to whether the statute antedates the charter or was enacted after the adoption of the charter." 2 McQuillin, Municipal Corporations, Third Edition, Chapter 4, Section 4.84.

Many decisions hold that in matters which do not concern the inhabitants of a municipality alone but which are of statewide interest or concern a municipality can be compelled to carry out the plans of the state and to perform the duties which it imposes. *City of Niles v. Stream Control Commission*, 296 Mich. 650, 296 N. W. 713; *Town of Meredith v. State Board of Health*, 94 N. H. 123, 48 A.

2d 489; *Commonwealth* v. *Town of Hudson,* 315 Mass. 335, 52 N. E. 2d 566; *Commonwealth* v. *Sisson,* 189 Mass. 247, 75 N. E. 619, 1 L. R. A., N. S., 752, 109 Am. St. Rep. 630; *Board of Purification of Waters* v. *Town of Bristol,* 51 R. I. 243, 153 A. 879; *State Board of Health* v. *City of Greenville,* 86 Ohio St. 1, 98 N. E. 1019, Ann. Cas. 1913D, 52; *State ex rel. Daly* v. *City of Toledo,* 142 Ohio St. 123, 50 N. E. 2d 338; 62 C. J. S., Municipal Corporations, Section 185. In *State ex rel. Clausen* v. *Burr,* 65 Wash. 524, 118 P. 639, 37 L. R. A., N. S., 466, the court said: "* * * in matters which do not concern the inhabitants of the municipality alone, the municipalities are acting as agencies for the government, and that they can be compelled to carry out the schemes of the state looking towards good government." In *City of Claremore* v. *Oklahoma Tax Commission,* 197 Okla. 223, 169 P. 2d 299, the opinion contains this language: "The state has the power to require municipal subdivisions to perform certain duties of state concern. Where such obligation is incurred in the discharge of a duty which is of state or public interest, the city cannot object thereto upon the ground that such duty was imposed without the city's consent." See also 62 C. J. S., Municipal Corporations, Section 190; *City of Richmond* v. *Pace,* 127 Va. 274, 103 S. E. 647; *Young Women's Christian Association of Plainfield, N. J.* v. *Gunter,* 230 Ala. 521, 162 So. 120; *Horrigan* v. *Mayor of Pittsfield,* 298 Mass. 492, 11 N. E. 2d 585; *Davock* v. *Moore,* 105 Mich. 120, 63 N. W. 424, 28 L. R. A. 783. In *State ex rel. Southard* v. *City of Van Wert,* 126 Ohio St. 78, 184 N. E. 12, the court said: "That the Legislature may impose upon a municipality the performance of certain duties of a public nature, and require it either to raise moneys for that purpose or to devote to it revenues already on hand, is well recognized." See also *State Board of Health* v. *City of Greenville,* 86 Ohio St. 1, 98 N. E. 1019, Ann. Cas. 1913D, 52; *People ex rel. Sanitary District of Chicago* v. *Schlaeger,* 391 Ill. 314, 63 N. E. 2d 382; *Littell* v. *City of Peoria,* 374 Ill. 344, 29 N. E. 2d 533; *People ex rel. Moshier* v. *City of Springfield,* 370 Ill. 541, 19 N. E. 2d 598; *People* v. *City of Chicago,* 351 Ill.

396, 184 N. E. 610; *Davock* v. *Moore,* 105 Mich. 120, 63 N. W. 424, 28 L. R. A. 783.

Under the police power of the State, the Legislature, in the regulation of public health, has the authority to enact Article 11, Chapter 16, Code, 1931, as amended, in the stated interest of public health, safety and welfare. The challenged provisions of Sections 11, 13 and 14, of Article 11 of the statute are a valid exercise of legislative power, do not contravene Article III, Section 10, of the Constitution of this State, or the Fourteenth Amendment to the Constitution of the United States, and are constitutional and valid. Though the provisions of those sections may be burdensome, and, to those subject to them, may seem to be oppressive and unwise, they can not solely for those reasons be held to be invalid. See 11 Am. Jur., Constitutional Law, Section 297. The test of valid legislation is legislative power. *Nulter* v. *State Road Commission of West Virginia,* 119 W. Va. 312, 193 S. E. 549, 194 S. E. 270.

In response to the citation of the Commission to appear before it on August 11, 1949, to show cause against the issuance by the Commission of an order dealing with the pollution of the Guyandotte River and the Ohio River caused by the sewage from the City of Huntington, the petitioner filed an answer in which, among other grounds of resistance to the proposed order, the petitioner asserted that the cost estimated by its engineers of the works and the facilities necessary to comply with the order of the Commission amounted to approximately six million dollars; that the petitioner does not have sufficient unused revenue for such purpose and is unable to raise it by levy upon the value of the taxable property in the municipality; that the value of such taxable property in the municipality as of January 1, 1949, was approximately one hundred and sixty million dollars which would enable and authorize bonded indebtedness of only approximately four million dollars; that there were then outstanding bonds in the amount of five hundred forty eight thousand dollars; that the remaining amount of authorized unincurred in-

debtedness was not sufficient to permit the issuance of six million dollars in bonds; and that because of the existing situation the petitioner is not financially able to comply with the proposed order of the Commission. That contention, advanced by the petitioner in this Court, is premature at this stage of this proceeding before any effort in good faith has been made by the petitioner to raise the necessary funds to comply with the order of the Commission and is not tenable.

Section 11 affords several means by which the petitioner may obtain and use the necessary funds. It authorizes the cost necessary to comply with the order of the Commission to be paid from funds of the petitioner on hand and available for that purpose, from general funds of the petitioner not otherwise appropriated, or from funds derived from an issue of bonds to increase the indebtedness of the petitioner or an issue of revenue bonds, which last mentioned bonds do not constitute a corporate indebtedness of the municipality. See *Brewer* v. *City of Point Pleasant,* 114 W. Va. 572, 172 S. E. 717. After the petitioner has made an effort in good faith to raise sufficient funds to pay the cost of installing and operating a practical and reasonably available system or means which will reduce the pollution of the water of the Guyandotte River and the Ohio River to an acceptable minimum, as required by the order, if it should appear that its financial condition is such that compliance with the order is presently impossible and that the petitioner is unable to remedy that situation, it may so report to the Commission, which, by statute, is authorized to extend the time fixed by the order for compliance by the petitioner with its requirements and to grant appropriate relief. The questions of financial ability or inability of the petitioner to comply with the order and of the relief to which it may be entitled upon a proper showing of such inability to comply are for determination by the Commission in the first instance. Those questions, however, are not now presented and can not be considered or determined by this Court upon this review; and as to such questions no opinion is entertained or expressed.

The remaining contentions of the petitioner that the statute is unconstitutional because it imposes penalties for violation of the order of the Commission and renders ineffective the discretion vested in` the council of the City of Huntington under existing statutes are also devoid of merit. Each of them is answered adversely to the petitioner and rejected by this Court for the reasons set forth in the opinion of the Supreme Court of Ohio in the well considered case of *State Board of Health* v. *City of Greenville*, 86 Ohio St. 1, 98 N. E. 1019, Ann. Cas. 1913D, 52. In that case the City of Greenville, a municipal corporation, was ordered by the State Board of Health to purify its sewage and to construct an adequate plant for that purpose by a specified date under penalties provided by the statute by virtue of which the board issued its order. In a proceeding in equity in the court of common pleas to enjoin the board from enforcing its order, the city insisted that it was financially unable to comply with the order of the board and assailed the constitutionality of the statute on the specific grounds, among others, that the statute rendered ineffective the discretion vested in the municipal authorities and imposed fixed penalties upon them for failure to comply with the order of the board. The court of common pleas sustained a demurrer to the amended petition and dismissed the suit. On appeal to the circuit court that court reversed the court of common pleas, overruled the demurrer, and granted a perpetual injunction. The Supreme Court reversed the circuit court and remanded the cause with directions to sustain the demurrer to the amended petition. In the opinion, disposing of and rejecting the contentions of the city that the statute was unconstitutional because it controlled the discretion of the city authorities and subjected them to criminal penalties for failure to comply with the order of the board, the court used this pertinent language:

"The state does not seek to control the discretion of the municipal authorities in this matter, but on the contrary refuses to commit to them *any* discretion touching the particular matters committed to the care and control of

the state board of health. In so far as they are charged with any duty in reference to the carrying out of the orders and directions of the State Board of Health they are ministerial officers only, and it is fully settled that a public officer may be required to perform a ministerial act, and that a failure or refusal by such officer to perform a ministerial act may be made a criminal offense and punished as a misdemeanor. The question whether he is guilty of this misdemeanor is a proper question for judicial inquiry, and, if he be innocent of any dereliction, neglect or refusal on his part, the courts will protect him. The law in this respect does not seek to deprive him of liberty or property without due process of law, nor does it deny to him equal protection of the laws. In our system of government there is nothing anomalous in the fact that an officer that is vested with official discretion in many matters and things pertaining to his office may nevertheless be required to perform certain ministerial duties. In so far as official discretion is concerned, courts will not interfere unless he is guilty of a plain abuse of discretion, but ministerial acts may always be enforced and there is no constitutional objection to imposing upon him, for failure to perform ministerial duties, a fixed penalty or a penalty within fixed limits to be imposed by the tribunal authorized to determine his guilt or innocence."

The judgment of the Circuit Court of Cabell County sustaining the validity of the order of the State Water Commission is affirmed.

*Affirmed.*